# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paula A. Serrano, : 
                 Petitioner : 
                 : 
          v. : No. 665 C.D. 2016
                 : No. 898 C.D. 2016
Unemployment Compensation : Submitted: September 2, 2016
Board of Review, : 
                 Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
                  HONORABLE JULIA K. HEARTHWAY, Judge
                  HONORABLE DAN PELLEGRINI, Senior Judge

**OPINION BY JUDGE BROBSON**        **FILED: October 31, 2016**

Petitioner Paula A. Serrano (Claimant) petitions for review of two orders of the Unemployment Compensation Board of Review (Board). By order dated April 13, 2010, the Board affirmed the Unemployment Compensation Referee's decision, which denied Claimant unemployment compensation benefits pursuant to Section 402(b) of the Unemployment Compensation Law (Law),[1] relating to voluntary separation without cause of a necessitous and compelling nature. By order dated May 12, 2016, the Board denied Claimant's request for reconsideration. Claimant petitions for review of both orders.[2] For the reasons set forth below, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(b).

[2] The Court consolidated the matters by order dated June 30, 2016.

Claimant filed for unemployment compensation benefits after voluntarily quitting her position as an operations manager at Lifeline Medical Services (Employer). The Allentown UC Service Center (Service Center) issued a Notice of Determination, finding Claimant ineligible for benefits under Section 402(b) of the Law. (Certified Record (C.R.), Item No. 5.) The Service Center reasoned that Claimant failed to meet her burden of proof to show a necessitous and compelling reason for quitting. (*Id.*) Claimant appealed the Service Center's determination, and a Referee conducted an evidentiary hearing.

Claimant testified that during her employment with Employer as an operations manager, she had ongoing issues with the dispatch supervisor. (C.R., Item No. 10, at 5.) Claimant resigned from her position in August 2015, reporting to her superiors that the dispatch supervisor created an intolerable work environment through sexual harassment and his use of racial slurs. (*Id*. at 5-10.) Employer convinced Claimant to return to work, according to Claimant, because Employer promised Claimant that she would not have to interact with the dispatch supervisor. (*Id*. at 5.) Claimant testified that the incidents of sexual harassment and use of racial slurs continued after she returned to work. (*Id.* at 7.) She also testified that she reported the incidents that occurred after she returned to work to the Chief Operations Officer and Senior Vice President. (*Id*. at 9-10.) On January 22, 2016, after there was confusion regarding scheduling in an email chain, Employer directed Claimant to speak with the dispatch supervisor directly. (*Id*. at 18.) Claimant refused and informed Employer that she quit. (*Id*.)

Michelle Seidel, Chief Operations Officer, testified for Employer. Ms. Seidel testified that she and Jim Dickenson, the Senior Vice President, spoke with the dispatch supervisor about complaints that employees had made. (*Id.*

at 15.) Ms. Seidel testified that after Claimant returned to work, Claimant made no additional formal complaints about the dispatch supervisor. (*Id.*) Ms. Seidel testified that she was shocked when Claimant quit so abruptly after she instructed Claimant to speak with the dispatch supervisor. (*Id.* at 16.) She also testified that while Claimant and the dispatch supervisor would disagree on occasion, they also would smoke cigarettes in the same location and joke with one another. (*Id.* at 15.)

Following the hearing, the Referee issued a decision and order, affirming the Service Center's determination. (C.R., Item No. 11.) The Referee made the following findings of fact:

1. The claimant worked fulltime as Operations Manager for Lifeline Medical Services from June 23, 2012 through January 22, 2016 at a final rate of $18 per hour.

2. The claimant and her supervisor previously worked together as employees at a different establishment, and came over to work for Lifeline Medical Services at inception.

3. The claimant had ongoing issues with a member of staff, who's also the dispatch supervisor because the claimant found the coworker's comments inflammatory and offensive.

4. Because of the claimant's concerns, at the end of August 2015, the claimant quit the employment citing her issues with the coworker.

5. The employer persuaded the claimant to return to her employment and promised to work things out with the coworker.

6. From the time the claimant returned to the employment until she quit the employment, the claimant did not report any further issues she had with the coworker to management.

3

7. The Chief Operations Officer (COO) would regularly request the claimant's assessment of the situation with the coworker, and the claimant always responded that they were fine.

8. In the office environment, the staff, including the claimant will regularly joke about other employees.

9. On January 22, 2016, the employer was trying to put together its schedule in view of the impending storm predicted for the upcoming weekend.

10. The claimant had questions about an email that did not make sense to her, and the Chief Executive Officer (CEO) directed the claimant to talk to the dispatch supervisor in order to resolve the issues.

11. The claimant sent an email to the Chief Executive Officer (CEO) that she would not talk to the dispatch supervisor, and that she quit the employment.

(*Id.*)[3] The Referee determined that Claimant voluntarily terminated her employment and failed to show cause of a necessitous and compelling nature for doing so. (*Id.*) The Referee explained that "the record does not show that from the time of the employer's intervention in August 2015, the claimant reported any further issues with her coworker." (*Id.*)

Claimant appealed to the Board, which affirmed the Referee's decision and order. (C.R., Item No. 13.) In so doing, the Board adopted and

---

[3] It appears that the Referee mistakenly described the involvement of the CEO of Lifeline Medical Services in findings of fact numbers 10 and 11. From our review of the record, it was actually the COO, Michelle Seidel, who directed Claimant to speak with the dispatch supervisor and received the resignation email from Claimant.

incorporated the Referee's findings of fact and conclusions of law. Claimant sought reconsideration with the Board, which the Board denied. Claimant now petitions this Court for review of both orders.

On appeal,[4] Claimant appears to contest the Board's decision in two ways. First, Claimant essentially argues that the Referee's findings, as adopted and incorporated by the Board, were not supported by substantial evidence of record. Specifically, Claimant challenges finding of fact number 6, which provides: "From the time the claimant returned to the employment until she quit the employment, the claimant did not report any further issues she had with the coworker to management." (C.R., Item No. 11.) In support of her argument, Claimant states she met with the Chief Operating Officer and Senior Vice President following her return to employment and made additional complaints. (Petitioner's Br. at 8.) Further, Claimant contends that the Board erred as a matter of law because she provided a necessitous and compelling reason for terminating her employment by demonstrating reports of "sexual harassment, racism, bias on religion and sexual orientation."[5] (Petitioner's Br. at 8.)

---

[4] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[5] The Board argues that Claimant only preserved for review the issue of whether or not the single directive to speak with the dispatch supervisor constituted a necessitous and compelling reason for her voluntary quit. We reject this argument. This Court views the necessitous and compelling issue more broadly, as Claimant takes issue with the entirety of the work environment. In addition, Claimant raises the issue of whether the findings of fact were supported by substantial evidence.

5

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in a light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Id.* A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record, taken as a whole, contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment compensation case, it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1388 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Peak*, 501 A.2d at 1388.

We first address Claimant's argument that the findings of the Referee, adopted by the Board, are not supported by substantial evidence. Claimant contests the Referee's finding that she did not report any further incidents of harassment after she returned to work in August 2015. Claimant cites her own

6

testimony that she did report the incidents to Mr. Dickenson as well as Ms. Seidel, but not in a formal, written complaint. (C.R., Item No. 10 at 9-10.) We observe, however, that Ms. Seidel testified at the Referee's hearing that she was surprised when Claimant quit after Claimant returned to work, because there had been no further complaints from Claimant or any other employee. (*Id.* at 5.) The Referee's resolution of this specific factual discrepancy binds this Court unless it is not supported by substantial evidence. Claimant attempts to show that this finding is unsupported by substantial evidence merely by pointing to contrary evidence in the record, which is insufficient to show that a finding is not supported by substantial evidence. *Verizon Pennsylvania Inc. v. Workers' Comp. Appeal Bd. (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015). Based on our review of Ms. Seidel's testimony, which the Referee found credible, we conclude that substantial evidence exists to support the finding that Claimant did not report further incidents of harassment after she returned to work.

We next address Claimant's argument that the Referee and Board erred as a matter of law in determining that she did not terminate her employment for a necessitous and compelling reason. Section 402(b) of the Law provides, in part, that a claimant shall be ineligible for compensation for any week in which the claimant's "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature." Whether a claimant had cause of a necessitous and compelling nature for leaving work is a question of law subject to this Court's review. *Brunswick Hotel & Conference Ctr., LLC v. Unemployment Comp. Bd. of Review*, 906 A.2d 657, 661 (Pa. Cmwlth. 2006). A claimant who voluntarily quits his employment "bears the burden of proving that necessitous and compelling reasons motivated that decision." *Fitzgerald v. Unemployment Comp.*

7

*Bd. of Review*, 714 A.2d 1126, 1129 (Pa. Cmwlth. 1998), *appeal denied*, 794 A.2d 364 (Pa. 1999). To establish cause of a necessitous and compelling nature, a claimant must establish that (1) circumstances existed that produced real and substantial pressure to terminate employment, (2) like circumstances would compel a reasonable person to act in the same manner, (3) the claimant acted with ordinary common sense, and (4) the claimant made a reasonable effort to preserve his employment. *Procito v. Unemployment Comp. Bd. of Review*, 945 A.2d 261, 264 (Pa. Cmwlth. 2008).

Sexual harassment and racial slurs may present adequate pressure to terminate one's employment, and a claimant need not be subjected to such language or conduct indefinitely. *Porco v. Unemployment Comp. Bd. of Review*, 828 A.2d 426, 428 (Pa. Cmwlth. 2003); *see also Peddicord v. Unemployment Comp. Bd. of Review*, 647 A.2d 295, 298 (Pa. Cmwlth. 1994). This Court has held that a claimant normally will not meet the fourth requirement—a reasonable effort to preserve employment—unless the claimant notifies the employer of the harassment. *Martin v. Unemployment Comp. Bd. of Review*, 749 A.2d 541, 544 (Pa. Cmwlth. 2000). However, failure to report harassment may be excused where the record evidence reveals that doing so would be futile. *Id.* Moreover, "there is a certain level of conduct that an employee will not be required to tolerate and the Court will not place all responsibility upon an employee to resolve his or her work dilemma. Ultimately the employer bears the responsibility for eliminating harassment against employees in the workplace." *Comitalo v. Unemployment Comp. Bd. of Review*, 737 A.2d 342, 345 (Pa. Cmwlth. 1999).

Our decision in *Mercy Hospital of Pittsburgh v. Unemployment Compensation Board of Review*, 654 A.2d 264 (Pa. Cmwlth. 1995), is directly

8

applicable. In *Mercy Hospital*, after the claimant returned to work from a rehabilitation center, coworkers called him names such as "alcoholic," "faggot," and "crazy." *Mercy Hospital*, 654 A.2d at 266. The claimant notified his employer, the hospital, and was given disability leave due to the emotional stress caused by the working environment. Upon his return from leave, however, the coworkers continued to harass him. The claimant quit his employment, and his employer was unable to convince him to stay. This Court rejected the hospital's argument that the claimant was required to afford the hospital a second attempt to rectify the situation. This Court reasoned that there was no evidence to suggest that the second attempt to end the harassment would be any different than the first attempt.[6] *Id.*

Here, the Referee and Board focused their analysis on Claimant's failure to report additional incidents after returning to work before she quit in January 2016. Our decision in *Mercy Hospital* instructs, however, that Claimant satisfied the notification requirement by bringing her complaints to her supervisors in August 2015, when she initially decided to quit. This notice afforded Employer the opportunity to rectify the situation. Claimant was not required to endure the alleged abusive behavior indefinitely, or to afford Employer more than one opportunity to address the alleged harassment. Her initial report to Employer

---

[6] The unreported case *Vito Rinaldi Chevrolet, Inc. v. Unemployment Compensation Board of Review*, (Pa. Cmwlth., No. 139 C.D. 2012, filed Aug. 16, 2012), lends further support for this proposition. There, this Court again held that after notifying the employer, the claimant was not required to provide the employer with a second opportunity to end the abusive conduct. *Id.*, slip op. at 3. We acknowledge that *Vito Rinaldi Chevrolet*, as an unreported panel decision of this Court, has persuasive value, but it does not constitute binding precedent. IOP 414(a), 210 Pa. Code § 69.414(a).

9

provided the requisite notice to allow Employer to attempt to alleviate the harassment. Lending further credence to her efforts to continue an employment relationship is the fact that Claimant resigned but then agreed to return to work. This demonstrates Claimant's willingness to allow Employer to remedy the problem and maintain her position. The Referee and the Board erred because the failure to notify Employer of the continuing harassment after Claimant's return to work was not the fatal flaw in her claim.

Nevertheless, we affirm the decision of the Board on other grounds. Claimant is unable to demonstrate the third requirement of a necessitous and compelling reason for her voluntary quit, *i.e.*— that she acted with common sense. The Referee found that the COO, Ms. Seidel, "would regularly request the claimant's assessment of the situation with the coworker, and the claimant always responded that they were fine." (C.R., Item No. 11, Finding of Fact (F.F.) No. 7.) Whether or not there were, in fact, additional incidents of harassment after Claimant's return to work, Claimant now maintains that she continued to have a conflict with the dispatch supervisor. Thus, Claimant was untruthful when she reported to Ms. Seidel that "they were fine." (*Id.*) Claimant's knowing misrepresentation of the conflict is distinct from merely failing to report harassment a second time. We conclude that Claimant did not act with common sense, because she misrepresented the employment situation to Employer. Claimant, therefore, has failed to demonstrate a necessitous and compelling reason for her voluntary quit. Thus, pursuant to Section 402(b) of the Law, Claimant is ineligible for unemployment compensation benefits.

With regard to the Board's denial of Claimant's request for reconsideration, in reviewing an order denying reconsideration, we are limited to

10

considering whether the Board abused its discretion in denying reconsideration. *Payne v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 928 A.2d 377, 379 (Pa. Cmwlth. 2007). An abuse of discretion in the denial of reconsideration of an administrative agency decision occurs only where the challenger establishes that the order is manifestly unreasonable or is based upon bad faith, fraud, capricious action, or an abuse of power. *Id.* Claimant has not established that the Board engaged in behavior that would constitute an abuse of discretion, and we do not perceive any such basis for such a conclusion. Thus, we conclude that the Board did not abuse its discretion in denying reconsideration of its earlier order, denying Claimant unemployment compensation benefits.

Accordingly, we affirm the Board's orders.

_____
P. KEVIN BROBSON, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Paula A. Serrano,                         :
              Petitioner        :
                                   :
          v.                             :  No. 665 C.D. 2016
                                   :  No. 898 C.D. 2016
Unemployment Compensation                 :
Board of Review,                          :
              Respondent       :

# **O R D E R**

AND NOW, this 31st day of October, 2016, the orders of the Unemployment Compensation Board of Review are AFFIRMED.

<br>

                                         
_____
P. KEVIN BROBSON, Judge