IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles J. Gigliotti,                    :
                         Petitioner      :
                                         :
            v.                           :    No.  1183 C.D. 2019
                                         :    Submitted:  March 13, 2020
Unemployment Compensation                :
Board of Review,                         :
                         Respondent      :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                         FILED:  May 12, 2020

        Charles Gigliotti (Claimant), *pro se*, petitions for review from an
order of the Unemployment Compensation Board of Review (Board), finding him
ineligible for unemployment compensation (UC) benefits pursuant to Section
402(e) of the Pennsylvania UC Law (Law).[1]  Claimant argues that the Board never
conducted a factual hearing and, thus, should be bound by the findings of fact of
the UC referee, who had the opportunity to determine the credibility and demeanor
of Claimant and the witnesses appearing on behalf of Triangle Tech (Employer).

        On February 10, 2019, Claimant filed a claim for UC benefits, and
on March 4, 2019, the local service center determined he was eligible.  Employer,

_____

        [1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(e).

a technical school, appealed the determination, and after a hearing, the UC referee affirmed the service center's determination. At the hearing before the UC referee, Ms. Stephanie Craig, director of school operations and student affairs, and Mr. John Kimpan, school director at Employer's Pittsburgh campus, testified on behalf of Employer. Claimant testified on his own behalf. No other witnesses testified. Based on the testimony and the witnesses before him, the UC referee determined that Employer had not met its burden of proof to establish Claimant's discharge from employment was for reasons which rose to the level of willful misconduct in connection with his work, and thus, benefits could not be denied under Section 402(e) of the Law, 43 P.S. §802(e).[2] Employer appealed to the Board which reversed the referee.

Because Claimant was discharged, Employer has the burden of establishing that the discharge was for willful misconduct in connection with his work. While Section 402(e) of the Law provides that a claimant shall be ineligible for compensation for any week in which his unemployment is due to discharge for willful misconduct connected with his work, the term "willful misconduct" is not actually defined in the Law. However, the Board and the appellate courts have defined willful misconduct as an act of wanton or willful disregard of the employer's interests, a deliberate violation of the employer's rules, a disregard of the standards of behavior which the employer has a right to expect of an employee,

---

[2] Section 402(e) of the Law states, in pertinent part, that "an employe shall be ineligible for compensation for any week—[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work, irrespective of whether or not such work is "employment" as defined in this act." 43 P.S. §802(e).

or negligence indicating an intentional disregard of the employer's interests or of the employee's duties and obligations to the employer. *Cipriani v. Unemployment Comp. Bd. of Review*, 466 A.2d 1102 (Pa. Cmwlth. 1983). "Where willful misconduct is based upon the violation of a work rule, the employer must establish the existence of the rule, its reasonableness, and that the employee was aware of the rule…. Once the employer meets its burden, the burden shifts to the claimant to prove that the rule was unreasonable or that he had good cause for violating the rule." *Brown v. Unemployment Comp. Bd. of Review*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). "An employer must enforce rules equally in order to establish a standard of conduct which could reasonably be expected of an employee…. The essence of disparate treatment is not only whether unlawful discrimination has or has not occurred but also…whether similarly situated people are treated differently based upon an improper criteria." *Remcon Plastics, Inc. v. Unemployment Comp. Bd. of Review*, 651 A.2d 671, 673 (Pa. Cmwlth. 1994).

"[T]he [Board] is the ultimate fact-finder in [UC] matters...." *Sipps v. Unemployment Comp. Bd. of Review*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (quoting *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008)). As the factfinder, the Board is entitled to make its own credibility determinations regarding witnesses. *Serrano v. Unemployment Comp. Bd. of Review*, 149 A.3d 435 (Pa. Cmwlth. 2016). These credibility determinations are not questioned on appellate review. *Id*. "[T]he law is well-settled that the Board, as the ultimate factfinder, need not observe the demeanor of witnesses in order to make credibility determinations." *County of Dauphin v. Unemployment Comp. Bd. of Review*, 637 A.2d 699, 702 (Pa. Cmwlth. 1994). "It

is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made." *Ductmate Indus.*, 949 A.2d at 342.[3]

Based on the record before it, the Board found Claimant was employed as a full-time carpenter instructor with Employer who last worked on February 14, 2019. Bd. Op., 6/26/19, Finding of Fact (F.F.) No. 1, 2. Claimant's most recent job description listed various functions and responsibilities, including practicing worksite safety in classrooms and labs and ensuring safety procedures are being followed by students at all times.[4] F.F. No. 3. Claimant attended a training session on safety violations on August 7, 2018. F.F. No. 4. Prior to the incident which led to Claimant's separation from employment, Employer had issued Claimant progressive discipline, some of which was for purported safety violations.[5] F.F. Nos. 5, 6. On February 7, 2019, Claimant was scheduled to teach

---

[3] In addition, Section 504 of the Law states, in pertinent part: "The board shall have power…to… review any claim pending before, or decided by, a referee, and in any such case and in cases where a further appeal is allowed by the board from the decision of a referee, may affirm, modify, or reverse the determination or revised determination, as the case may be, of the department or referee on the basis of the evidence previously submitted in the case, or direct the taking of additional evidence."

43 P.S. §824.

[4] Claimant's signed job description also provided that he would "[e]nsure that all safety protocols are in place" and that he was "[r]esponsible to notify supervisors immediately of safety violations or unsafe conditions." C.R., Item No. 5.

[5] Claimant had been disciplined as follows: a written warning on June 7, 2011; a written warning on March 27, 2012, which referenced student safety concerns, including the need to supervise students under his care; a written warning on June 27, 2013; and a final written warning on June 25, 2018. C.R., Item Nos. 5, 11.

a carpentry lab for a group of young adult students from 9:30 a.m. to 11:00 a.m., and Claimant and his students were scheduled to go to lunch at 11:00 a.m. F.F. Nos. 8, 9. Teachers are expected to keep their assigned schedule and do not have discretion to release students early. F.F. No. 9. However, Claimant released his students at approximately 10:30 a.m. F.F. No. 10. Shortly thereafter, the director of school operations was notified of a student safety issue and was asked to intervene. She looked out an office window and saw four of Claimant's students standing inside a garbage dumpster, which was overflowing with construction materials. These students were involved in an effort to compact the materials in the dumpster. F.F. Nos. 11, 12. The director saw Claimant and another instructor standing by watching the students. F.F. No. 13. The director came out and approached the Claimant who was only a few feet away from the dumpster. F.F. No. 14. The director noticed the dumpster contained pieces of wood with protruding nails. F.F. No. 15. The director noted that this was unsafe, and the students left the dumpster. F.F. Nos. 16, 17. Employer reviewed the incident, and because Claimant was on a final warning, it discharged him for failing in his duty to maintain a safe environment for his students. F.F. No. 18.

The Board determined that the facts, including Employer's witnesses' credible testimony, established that Claimant's actions rose to the level of willful misconduct. The Board concluded:

> [C]laimant was previously warned for student safety-related issues and he was on a final warning prior to the final incident. Even if the [C]laimant did not instruct his students to get up into the dumpster and compact the debris, he clearly did nothing to stop them and he stood there observing them without intervening. The [C]laimant admitted that the whole situation

5

was in fact unsafe. Moreover, the students were supposed to be in the [C]laimant's carpentry lab at the time and they were in the area of the dumpster only because the [C]laimant had improperly released them to lunch early. The [E]mployer did not have an ulterior move in discharging the [C]laimant nor was the [C]laimant subjected to disparate treatment, as there is no evidence the other instructor was on a final warning. Moreover, the other instructor denied any allegation that he asked the students to get into the dumpster. Under these circumstances, the Board concludes that the [C]laimant is ineligible for benefits under Section 402(e) of the Law.

Bd. Op., "Discussion" section at 3.

Claimant filed a petition for review,[6] arguing the Board erred by disregarding the findings of the UC referee who had the opportunity to listen to the testimony in the case and was able to observe the demeanor of the witnesses. Claimant argues that the Board should be bound by the UC referee's findings because the referee had the opportunity to determine the credibility and demeanor of Claimant and Employer's witnesses. In addition, Claimant asserts the Board erred because its findings of willful misconduct were not supported by the

---

[6] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't. of Corr. v. Unemployment Comp. Bd. of Review*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal as long as they are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422 (Pa. 2003). "Substantial evidence is defined as evidence a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Review*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013). "In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence." Resp't's Br. at 7 (citing *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986)).

6

evidence of record and because it did not determine the UC referee had committed an error of law. Claimant also asserts that the Board exceeded its authority by issuing an order and making findings of fact that were not supported by the evidence previously submitted in the case.

In his brief, Claimant acknowledges receiving two prior safety violations but argues that his final warning had not been safety-related[7] and that no student had ever been injured during his 8½ years on the job. *See* Pet'r's Br. at 9. Claimant asserts that he released his students at 10:50 a.m. and that the students are routinely dismissed at 10:45 a.m. for lunch. He added that, after he dismissed his students for lunch, another teacher, Mr. Conner (Conner) "shouted that he needs volunteers to climb in and pack the dumpster." Pet'r's Br. at 10. Claimant asserts that he met Conner at the dumpster. However, he contends that when the Employer's director approached the scene, Conner had "disappeared into the building." Pet'r's Br. at 10. Claimant maintains that the director asked him if he thought the situation was safe and that he responded "I will get them out of there." *Id.* Claimant notes that the UC referee's findings indicate that he, *i.e.*, Claimant, observed the students in the dumpster for approximately 15 to 30 seconds, while the Board found that Claimant observed the students for over one minute. Claimant also contends that he did not tell Conner he was wrong because Conner

---

[7] Claimant asserts that his final warning was related to having power tools repaired "with the director not recalling he endorsed the idea." Pet'r's Br. at 9.

was his "superior."[8]  Pet'r's Br. at 11.  Claimant asserts that he merely asked Conner why the students were in the dumpster instead of leaving for lunch. *Id.*

Claimant references certain Board findings as "new entr[ies]." Pet'r's Br. at 9-10.  However, there is documentary and/or testimonial evidence in the record in regard to each of these matters.  It is simply that the Board made findings in regard to this evidence that was not included in the UC referee's decision/order.  One such "new entry" was a Board finding that the Employer did not have an ulterior motive in regard to its decision to terminate Claimant's employment.  F.F. No. 20.[9]

On review, the record supports the Board's findings that Claimant's employment was terminated due to willful misconduct.  Claimant had been disciplined on multiple occasions, some of which involved safety-related issues, including specific admonishment for failure to properly supervise students.[10]  As a

---

[8] Other than this assertion, the record does not indicate that the other instructor, i.e., Conner, was Claimant's superior.  In fact, Claimant himself identifies Conner as "another instructor."  C.R., Item No. 4 ("Claimant's Statement").

[9] Claimant alludes to Employer inappropriately considering his age as part of its decision to terminate his employment.  However, he does not directly make this assertion, and the Board credited the Employer's testimony otherwise, specifically the testimony of Mr. Kimpan that he had heard from a former student that Claimant was retiring and then asked Claimant if that was, in fact, true.  The record reveals that Mr. Kimpan testified before the UC referee that one of his responsibilities is to ensure Employer is adequately staffed, so he was concerned, from a staffing perspective, that Claimant might be contemplating retirement.  Mr. Kimpan further testified that this matter had nothing to do with his decision to terminate Claimant's employment.  C.R., Item 11 at 23.

[10] C.R., Item No. 11, "Notice of Discipline," 3/27/12.

8

result, Claimant was on a final warning status at the time of his last infraction. Further, Employer had specific rules in place, of which Claimant was, or should have been, aware. In addition to an employee handbook which addressed safety matters, Claimant was provided safety training. Claimant was responsible for his students up to 11:00 a.m. and had released them to lunch in advance of this time. Subsequently, when he arrived at the garbage dumpster and found his students in it, he appears, minimally, to have been slow to react to the situation. Claimant takes issue with the Board's determination that Claimant observed his students in the dumpster for approximately one minute, whereas the referee had found that Claimant observed same for approximately 15-30 seconds. However, we find little merit in Claimant's contention where Claimant, himself, testified that his students were in the dumpster for "less than two minutes" and where Claimant was responsible for the students until 11:00 a.m. C.R., Item 11 at 17.

Claimant's appeal is, at its essence, an attack on the Board's findings and credibility determinations. However, as noted previously, "the [Board] is the ultimate fact-finder in [UC] matters. . . ." *Sipps,* 181 A.3d at 484. As the fact-finder, the Board is entitled to make its own credibility determinations regarding witnesses. *Serrano.* These credibility determinations are not questioned on appellate review. *Id.* Although Claimant takes issue with the Board's findings where they differ from those of the referee, "it is well settled that the Board is the ultimate finder of fact in unemployment compensation proceedings." *Chapman v. Unemployment Comp. Bd. of Review*, 20 A.3d 603, 607 (Pa. Cmwlth. 2011). "[I]ssues of credibility are for the Board which may either accept or reject a

witness' testimony whether or not it is corroborated by other evidence of record." *Id.*

The Board notes a number of specific examples where Claimant challenges the Board's findings but where the challenges lack merit. As the Board asserts: "Claimant questions Finding of Fact Number 4, that he attended a safety violations training on August 7, 2018, arguing that all employees are required to attend the training. . . . However, while true, Claimant does not explain how this fact helps him." Resp't's Br. at 7. The Board notes that:

> Claimant also asserts that Finding of Fact Number 5 is incorrect because the final written warning he received on June 25, 2018, was not for a safety violation, and the Board failed to acknowledge his testimony that neither himself nor any students were ever injured on his watch…. However, Finding of Fact Number 5 states only that some of Claimant's prior discipline was related to safety violations, not all of it. The purpose of the final warning was to place Claimant on notice that any further violations of Employer's policy would result in further disciplinary actions, up to discharge…. Further, the Board is not required to make a finding on irrelevant testimony. The fact that neither Claimant nor his students were actually injured does not mitigate a safety violation that was stopped by the [d]irector before anyone got hurt. Therefore, this testimony is irrelevant.

Resp't's Br. at 7-8. Claimant makes additional arguments that have no support in the record and other arguments in which he merely challenges the Board's credibility determinations. However, Claimant may not now add to his argument, and this Court will not second-guess the Board's credibility determinations on appeal.

Due to Claimant's track record, as reflected in prior discipline for safety-related violations, as well as his training relative to safety matters, Claimant should have been more conscientious than he was when it came to Employer's safety concerns. Given Employer's interest in maintaining its reputation as a technical school, it was, and is, not unreasonable for it to place a high priority on safety. Further, we cannot say that Claimant was unaware of the importance of these concerns, as Employer had made him well aware of same through its handbook,[11] safety training, and through a number of individual warnings about his lack of careful attention to safety issues. In addition, Claimant, himself, acknowledged that his job description required him to ensure the safety of his students and to comply with Employer's safety policies. Claimant also agreed that students being on top of debris in a dumpster created an unsafe situation. C.R. Item 11, hearing transcript, at 18. Given the totality of the evidence before us, we cannot escape the conclusion that: (1) Claimant was aware of Employer's rules; (2) those rules were reasonable in light of Employer's business concerns; (3) Claimant disregarded the standards of behavior which Employer had a right to expect of its employees (or, alternatively, was negligent, indicating an intentional disregard of Employer's interests or Claimant's own duties and obligations to Employer); and (4) Claimant's employment was properly terminated due to willful

---

[11] In addition to notifying employees of the possibility for disciplinary action, up to dismissal, for various rule violations, the employee handbook specifically states that "committing a safety violation" is a type of infraction which may lead to such discipline. C.R., Item No. 5, Employee Handbook at 7-2.

11

misconduct, as that term is understood in UC law. Accordingly, we affirm the Board's order denying Claimant's claim for UC benefits.

                           _____
                           J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Charles J. Gigliotti,               :
                   Petitioner       :
                                    :
        v.                          :    No.  1183 C.D. 2019
                                    :
Unemployment Compensation           :
Board of Review,                    :
                   Respondent       :

# **O R D E R**

**AND NOW**, this    12th    day of   May   2020, the order of the
Unemployment Compensation Board of Review is **AFFIRMED**.

_____
J. ANDREW CROMPTON, Judge