IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Georgina J. Gyuriska,  :
               Petitioner  :
            :
          v.  :  No. 1719 C.D. 2019
            :  Submitted: June 19, 2020
Unemployment Compensation Board  :
of Review,  :
               Respondent  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
               HONORABLE ANNE E. COVEY, Judge
               HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT              FILED: October 14, 2020

Georgina J. Gyuriska (Claimant), *pro se*, petitions for review of an adjudication of the Unemployment Compensation (UC) Board of Review (Board) holding Claimant ineligible for unemployment compensation benefits under Section 402(e) of the Unemployment Compensation Law (Law).[1]  In doing so, the Board affirmed the Referee's determination that Claimant's repeated use of foul language constituted willful misconduct.  Claimant contends she did not use foul language and, even if she did, she was entitled to a written warning prior to termination.  For the following reasons, we affirm.

On April 22, 2016, Claimant began employment with Allied Services Foundation (Employer) as a full-time custodian at a federal courthouse.  On May 7,

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e). Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any week in which her unemployment is due to her discharge from work for willful misconduct connected with her work.

2019, Employer discharged Claimant for violating its policy against insubordination and the use of obscene language.

Claimant applied for UC benefits, claiming she was fired because she cannot read well and refused to sign a document she could not comprehend. Employer responded that Claimant was fired for continually using foul language toward her supervisor, despite being warned to stop. Based on the evidence presented, the UC Service Center issued a Notice of Determination finding Claimant ineligible for benefits for swearing at her supervisor, an insubordinate act constituting willful misconduct. Claimant appealed, and a hearing was conducted by a Referee.

At the hearing, Employer presented the testimony of Robert Bruce, its project manager and Claimant's supervisor. He testified that Claimant worked for Employer under a "federal contract" for persons with disabilities. Notes of Testimony, 8/2/2019, at 6 (N.T. __); Reproduced Record at 7 (R.R. __). As such, she received a base rate of $11.41 per hour and "$4.48 [per hour through a] health and welfare benefit." N.T. 5; R.R. 6. Claimant was assigned to work from 6:00 a.m. to 2:30 p.m., cleaning offices and restrooms in the courthouse.

Bruce had supervised Claimant for two years. During that time, he gave Claimant several verbal warnings regarding her job performance. These warnings stated that Claimant was spending too much time on her cellphone and chatting to security workers, which resulted in her not performing her job duties. Bruce had never heard Claimant use foul language in the workplace until approximately two weeks before her discharge. He then began correcting her "[a]ll the time." N.T. 10; R.R. 11.

On May 6, 2019, Bruce received an e-mail from his supervisor stating that the employees needed a refresher course on protocols at the courthouse. Specifically, the employees needed to be reminded to knock before entering offices and explain why they were there. Bruce was also asked to warn the employees about using their cellphones during work hours.

Bruce discussed the refresher course with Claimant and four other employees in the "break room." N.T. 8; R.R. 9. He then asked them to sign a document acknowledging receipt of the information. The other four employees read and signed the document. Claimant responded that she did not understand the document. Bruce read it to her and Claimant stated, "I ain't signing no fucking paper." N.T. 8; R.R. 9.

A few hours later Bruce encountered Claimant standing by a restroom, and he described their conversation as follows:

> I asked her what she was doing. And she said I just got done cleaning the fucking courtroom. What do you think I was doing here? And I said you cleaned that earlier. She said well, I'm fucking doing it again. I said knock off the language. And that's when she told me. She says I'm only telling you what I'm doing. I said no, you're using that foul language. I don't want it anymore. And she said well, I just got fucking done. So I says – that's when I terminated her. I said I'm not going to put up with that language anymore. She said well, I don't give a fuck.

N.T. 9; R.R. 10.

Bruce stated that Employer has a discipline and discharge policy (Policy) prohibiting insubordination and the use of foul language. When employees are hired, they receive a copy of the Policy and must sign a document agreeing to abide by its terms. The Policy states:

> While [Employer] generally subscribes to the notion of progressive discipline, the specific disciplinary action taken in each instance will be determined by the supervisor or manager responsible for imposing the discipline, who may take into account, among other things, the nature of the infraction, the employee's prior work record, including the number and types of prior disciplinary actions taken against him/her, and the impact of the employee's infraction on others.

Service Center Exhibit 12, Policy at 1; R.R. 41. The Policy lists "[i]nsubordination" as a violation of the "Rules Relating To Attitude And Performance On The Job." *Id.* at 2; R.R. 42. The Policy further prohibits the "[u]se of obscene and/or profane language or personally insulting behavior toward anyone, at any time, on [Employer's] premises." Service Center Exhibit 12, Policy at 3; R.R. 43.

Claimant testified[2] that Bruce entered the break room and told everyone to read and sign a piece of paper. The other employees signed it without even reading it. Claimant looked it over and told Bruce she did not understand it because she does not read well. Bruce advised her she would be discharged if she did not sign it. When she responded that Bruce had threatened a violation of her civil liberties, he took the paper from her and left the room.

"[T]wo minutes later,"[3] Bruce entered the courtroom where Claimant was working. N.T. 15; R.R. 16. She had just finished cleaning the courtroom and was washing her hands. He said she was insubordinate for not signing the paper. She again declined to sign the paper because she did not understand it. She testified that she did not use profane language. Claimant also stated she did not remember ever using profane language in the workplace, or being warned by Bruce to stop

---

[2] Claimant's father participated as a non-legal representative.

[3] Claimant was questioned whether her interaction with Bruce occurred hours or minutes after the break room meeting; she insisted it occurred minutes later.

using profane language. Even on the day Bruce discharged Claimant, she left quietly without using profane language.

The Referee affirmed the UC Service Center's determination that Claimant was ineligible for benefits under Section 402(e) of the Law because she had engaged in willful misconduct. In so holding, the Referee stated that an employee's use of profane language, where not tolerated by an employer, may constitute willful misconduct. The Referee credited the testimony of Bruce that Claimant continued to use profanity after being warned to stop and was, ultimately, terminated for that conduct.

Claimant appealed to the Board. She asserted that Employer did not establish willful misconduct because Bruce testified falsely. Further, Claimant argued that Employer failed to provide her with a written warning to which she was entitled prior to being discharged.

The Board affirmed the Referee. The Board explained that Employer's Policy permits, but does not require, progressive discipline. The Policy authorized Claimant's supervisor to evaluate the nature of the infraction and the repeated verbal warnings made to Claimant. Claimant ignored Bruce's directives and continued to use foul language. The Board rejected as not credible Claimant's testimony denying the use of foul language. The Board held Employer established that Claimant was aware of Employer's Policy regarding insubordination and the use of profane language and, therefore, established she committed willful misconduct.

Claimant now petitions for this Court's review of the Board's adjudication.[4] Claimant argues that Bruce's testimony is insufficient to prove willful

---

[4] Our review determines whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial competent evidence.

5

misconduct because it was perjured testimony. Claimant argues that no evidence was offered to substantiate Bruce's testimony and the Board should have known his testimony was not credible. Further, she did not receive any prior warnings about using foul language.

We begin with a review of the applicable law. In UC cases, the initial burden of proving willful misconduct lies with the employer. *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015). Although not defined in the Law, willful misconduct has been interpreted to include:

> (i) wanton and willful disregard of the employer's interests; (ii) a deliberate violation of the employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations.

*Id.* Where an employer seeks to deny UC benefits based on a work rule violation, the employer must show that the rule existed; that the rule was reasonable; and that the claimant was aware of and violated the rule. *Id.* If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Id.*

The Board's findings of fact must be supported by "[s]ubstantial evidence [which] is defined as 'such relevant evidence which a reasonable mind would accept as adequate to support a conclusion.'" *Western and Southern Life Insurance Co. v. Unemployment Compensation Board of Review*, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006) (quoting *Guthrie v. Unemployment Compensation Board of*

---

*Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

*Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999)).  "The Board's findings are conclusive on appeal so long as the record, when viewed in its entirety, contains substantial evidence to support the findings."  *Western and Southern Life Insurance Co.*, 913 A.2d at 334 n.2.  This Court is bound "to examine the testimony in the light most favorable to the party in whose favor the Board has found, giving that party the benefit of all inferences that can logically and reasonably be drawn from the testimony" to determine if substantial evidence exists for the Board's findings.  *United States Banknote Co. v. Unemployment Compensation Board of Review*, 575 A.2d 673, 674 (Pa. Cmwlth. 1990) (quoting *Taylor v. Unemployment Compensation Board of Review*, 378 A.2d 829, 831 (Pa. 1977)).  Moreover, "even if there is contrary evidence of record, the Board's findings of fact are binding upon the Court where supported by substantial evidence."  *Borough of Coaldale v. Unemployment Compensation Board of Review*, 745 A.2d 728, 731 (Pa. Cmwlth. 2000).

Further, "it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight."  *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985)).  "The Board is also empowered to resolve conflicts in the evidence."  *Serrano*, 149 A.3d at 439 (citation omitted).  "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review."  *Id*. (quoting *Peak*, 501 A.2d at 1388).  Accordingly, "[t]his Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board."  *Chartiers Community Mental Health*

7

*and Retardation Center v. Unemployment Compensation Board of Review*, 134 A.3d 1165, 1173 (Pa. Cmwlth. 2016).

Here, Claimant argues that she was discharged due to her inability to comprehend a document Bruce told her to sign. She argues that Bruce lied when he testified he read the document to her and when he testified that she used profanity. Further, Employer presented no evidence she was previously disciplined for using foul language.

Claimant's arguments lack merit. As the Board aptly observes, Claimant's testimony on the above points was found incredible. Instead, the Board credited Bruce's version of events. The Board's credibility determinations are binding on appeal. *Serrano*, 149 A.3d at 439.

Claimant also contends that Employer did not establish she had used foul language prior to the day of her termination. In support, Claimant argues that Bruce offered perjured testimony about her prior reprimands, which were made verbally, not in writing, and to which Bruce was the only witness. Claimant's argument again fails because it is the Board, not this Court, that decides the truthfulness of the witnesses. *Chartiers Community Mental Health and Retardation Center*, 134 A.3d at 1172-73. Moreover, Employer's Policy does not require that an employee receive a written reprimand prior to termination. Service Center Exhibit 12, Policy at 1; R.R. 41.

For the foregoing reasons, we affirm the Board's adjudication that Claimant was ineligible for benefits under Section 402(e) of the Law.

_____
MARY HANNAH LEAVITT, President Judge

8

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Georgina J. Gyuriska,             :
          Petitioner          :
                        :
          v.                :   No. 1719 C.D. 2019
                        :
Unemployment Compensation Board   :
of Review,                 :
          Respondent     :

# **O R D E R**

AND NOW, this 14th day of October, 2020, the adjudication of the Unemployment Compensation Board of Review dated October 18, 2019, is hereby AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge