IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David E. Rosowski,             :
                               :
                 Petitioner    :
                               :
        v.                     :  No. 870 C.D. 2020
                               :  Submitted:  February 26, 2021
Unemployment Compensation      :
Board of Review,               :
                               :
                 Respondent :


BEFORE:    HONORABLE P. KEVIN BROBSON, President Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                              FILED:  August 20, 2021


        Petitioner David E. Rosowski (Claimant) petitions for review of the
August 13, 2020 order of the Unemployment Compensation Board of Review
(Board) that affirmed a referee's determination that Claimant was ineligible for
unemployment compensation (UC) benefits under Section 402(b) of the
Unemployment Compensation Law (Law),[1] because he voluntarily quit his job
without a necessitous and compelling reason.  We affirm.

        Claimant was employed as a heating, ventilation, and air conditioning
(HVAC) technician with Flanagan Mechanical Services LLC (Employer), from

_____

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S.
§802(b).  Section 402(b) of the Law provides, in relevant part, that "[a]n employe shall be
ineligible for compensation for any week . . . [i]n which his unemployment is due to voluntarily
leaving work without cause of a necessitous and compelling nature[.]"  *Id.*

February 2019, until his last day of work on November 27, 2019, at a final rate of pay of $58.00 per hour. Referee's 5/15/2020 Decision, Finding of Fact (F.F.) No. 1. Claimant left work that day and did not return, despite that continuing work was available to him, because he planned to have knee surgery, which was cancelled at the last minute. F.F. Nos. 2-3. Employer thereafter hired another technician to replace Claimant. F.F. No. 4.

Claimant applied for UC benefits. Certified Record (C.R.), Item No. 2 at 1-2. In his Employment Separation Questionnaire, Claimant indicated that his last day with Employer was November 27, 2019, and explained that he had notified Employer in October of 2019 that he needed surgery on his left knee, that he would return to work sometime in February or March of 2020, and that Employer told Claimant he "would be hired back." *Id*. at 2. Claimant also explained that his surgery had been scheduled for December 17, 2019, and that it was subsequently cancelled on December 10, 2019, at which time Claimant "[i]mmediately contacted [E]mployer and told [Employer that he] was available for work on [December 16, 2019]." *Id.* Employer told Claimant that someone had already been hired to replace Claimant. *Id*. Claimant further indicated that his position with Employer was permanent and full-time, that he was separating from his employment for health reasons, that he was taking a leave of absence for knee surgery scheduled for December 17, 2019, and that he also had no work limitations and did not inform his employer of any work limitations prior to his separation. *Id*. at 3. In response, Employer reported that Claimant voluntarily quit his job due to health reasons, that he was unable to climb ladders and scheduled knee replacement surgery, and that continuing work was available to Claimant, but he failed to report for an assignment on November 28, 2019, stole tools, and refused to return the company work van for

several weeks.  C.R., Item No. 3 at 1-2.  The local UC Service Center determined that Claimant was ineligible for benefits under Section 402(b) of the Law because he failed to show that he had a necessitous and compelling reason for leaving his job.  C.R., Item No. 4.

Claimant appealed, and a referee held a hearing on April 29, 2020, via telephone, during which Claimant testified on his own behalf and John Flanagan (Flanagan), owner of Employer, testified on behalf of Employer.  C.R., Item Nos. 5, 9; Referee's Hearing, 4/29/2020, Notes of Testimony (N.T.) at 1-2.  At the hearing, the referee entered, *inter alia*, the Employment Separation Questionnaire, the Claimant Questionnaire, the Employer Questionnaire, the local UC Service Center's determination, Claimant's appeal document, and the Claim Record into the record without objection from either party.[2]  *Id.* at 2-3.  Claimant testified that he began working for Employer as an HVAC technician in February of 2019, and that his last day of work was November 27, 2019.  *Id.* at 4.  Claimant confirmed that the written explanation that he provided in his Employment Separation Questionnaire was accurate.  *Id.*  Claimant also explained that Employer laid him off for lack of work in October of 2019, but that he ultimately left work because he was going to have knee surgery, which Employer "said [] would not be a problem."  *Id.*

Flanagan then testified on behalf of Employer, stating that Claimant's testimony was "absolutely not true."  N.T. at 5.  Flanagan testified that Employer was very busy with work and that, in October of 2019, when Claimant asked if Flanagan would lay him off, Flanagan did not agree to do so.  *Id.*  Rather, Flanagan told Claimant "to get with [Flanagan] when the time got closer" and Flanagan

---

[2] We note that Flanagan, appearing on behalf of Employer, indicated that he never received the documents.  He nevertheless waived his right to receive such documents, and the hearing proceeded as scheduled.  *See* C.R., Item No. 9; Referee's Hearing, 4/29/2020, N.T. at 1.

"would look at it." *Id*. Flanagan explained that Claimant never got back to him as the time got closer, and that Claimant then did not show up for work one morning.[3] *Id*. Flanagan then explained that he texted Claimant that morning to see where he was, and Claimant responded only that he was not reporting for work. *Id.* Claimant then stopped showing up for work thereafter. *Id*.

Flanagan testified that Claimant texted him on December 10, 2019, to inform Flanagan that Claimant's surgery was cancelled. N.T. at 6. Flanagan stated that Claimant went to Florida at some point, and "it was two weeks after he didn't show up for work. Because in the interim [Claimant] had gone to Florida for two weeks." *Id.* Flanagan further explained that "[d]uring the interim when [Claimant] left, he refused to allow us access to the company vehicle[,]" but then stated that Employer did ultimately get the vehicle back. *Id.* Flanagan also admitted, after Claimant elaborated on the content of Claimant's December 10, 2019 text to Flanagan, that Claimant did express in his text message his readiness and availability to return to work on December 16, 2019. *Id* at 7. Flanagan further admitted that he responded to Claimant's text by stating that he already hired someone to replace Claimant. *Id*.

After considering the testimony and documentary evidence, the referee issued a decision on May 15, 2020, affirming the Service Center's determination and denying benefits. C.R., Item No. 10; Referee's 5/15/2020 Decision at 1-2. The referee resolved all conflicts in the testimony in favor of Employer and made the following findings of fact:

---

[3] The date that Claimant stopped showing up for work does not appear in the hearing transcript. Employer nevertheless identified the date as November 28, 2019, in its Employer Questionnaire. C.R., Item No. 3 at 2.

1.    [C]laimant was last employed as an HVAC technician by [Employer] from February 2019 at a final rate of $58 per hour and his last day of work was [November 27, 2019].

2.    [C]laimant abandoned continuing work.

3.    [C]laimant planned to have knee surgery, but it was cancel[l]ed at the last minute.

4.    [E]mployer hired another technician to replace [C]laimant.

*Id*. at 1-2, F.F. Nos. 1-4. Based on the above findings, the referee determined that Employer had continuing work available for Claimant, but that Claimant stopped showing up for work and did not contact Employer. *Id.* at 2. Employer then hired someone else to fill Claimant's position. *Id.* Therefore, the referee concluded that Claimant abandoned continuing work and was thus ineligible for benefits under Section 402(b) of the Law, because he voluntarily quit his employment without cause of a necessitous and compelling nature. *Id.*

Claimant appealed to the Board, reiterating his previous arguments and testimony and specifically challenging Findings of Fact Nos. 2 and 4. C.R., Item No. 11 at 11. By decision and order dated August 13, 2020, the Board adopted and incorporated the referee's findings of fact and conclusions of law as its own and affirmed the referee's decision. C.R., Item No. 12. In so doing, the Board noted "a sizeable discrepancy between the parties' respective" version of events and that the referee gave greater weight to Employer's testimony. *Id*. It nevertheless declined to disturb the referee's credibility determination and her resultant findings. *Id.* Claimant then petitioned this Court for review of the Board's order.[4]

---

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *Wells v. Unemployment Compensation Board of Review*, 236 A.3d 108, 110 n.3 (Pa. Cmwlth. 2020).

On appeal, Claimant argues that the Board's findings are not supported by substantial evidence. Specifically, he challenges Finding of Fact No. 2, in which the Board found that he abandoned continuing work. Claimant further argues that the Board erred by evaluating his claim under Section 402(b), as opposed to Section 402(e) of the Law, 43 P.S. §802(e) (relating to willful misconduct). Finally, Claimant argues that the Board erred in determining that Claimant did not have a necessitous and compelling cause to resign his employment.

We first address Claimant's substantial evidence argument. Claimant argues that the Board erred in finding that he abandoned continuing work based on the contradictions within Flanagan's testimony and a lack of testimony about when Claimant allegedly abandoned his work. He claims that the Board should have credited his testimony over the testimony that Employer presented. Essentially, Claimant asks this Court to overturn the Board's credibility determinations and accept his version of events, which we decline to do.

It is well established that the Board is the ultimate factfinder in UC cases and is empowered to make its own determinations as to witness credibility and evidentiary weight, as well as to resolve conflicts in the evidence. *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1386 (Pa. 1985); *DeRiggi v. Unemployment Compensation Board of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). The Board's findings are binding on appeal if they are supported by substantial evidence, which has been defined as "such relevant evidence which a reasonable mind would accept as adequate to support a conclusion." *Guthrie v. Unemployment Compensation Board of Review*, 738 A.2d 518, 521 (Pa. Cmwlth. 1999). Moreover, we must view the record in the light most favorable to the party prevailing before the Board – here, Employer – and afford that party the benefit of

6

all reasonable inferences that can be drawn from the evidence to determine if substantial evidence exists. *Curran v. Unemployment Compensation Board of Review*, 752 A.2d 938, 940 (Pa. Cmwlth. 2000).

In this case, the Board resolved the conflicts in the evidence in favor of Employer and, in doing so, credited the testimony that Employer presented that Claimant stopped showing up for work without explanation. While Claimant clings to his testimony that he informed Flanagan that he would need to take a leave of absence to undergo knee replacement surgery, which was later cancelled, and that Flanagan told him that he would be laid off in the interim, the Board did not credit this testimony and instead found that Claimant voluntarily separated from his employment when he stopped showing up for work and failed to contact Employer, thus requiring that Employer hire someone else to fill Claimant's position. Claimant's attempt to show that the Board erred in so finding by merely pointing to contrary evidence in the record is insufficient to show that a finding is not supported by substantial evidence. *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Verizon Pennsylvania Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1162 (Pa. Cmwlth. 2015)). As stated above, "[q]uestions of credibility . . . are within the sound discretion of the Board, and are not subject to re-evaluation on judicial review." *Serrano*, 149 A.3d at 439 (citing *Peak*, 501 A.2d at 1388). As such, we conclude that substantial evidence exists to support the finding that Claimant voluntarily left his employment.[5]

Claimant also appears to argue that substantial evidence of **when** Claimant allegedly abandoned work is lacking. As noted above, substantial evidence has been defined as "such relevant evidence which a reasonable mind

---

[5] *See Holt v. Unemployment Compensation Board of Review*, 840 A.2d 1071, 1073 (Pa. Cmwlth. 2004) (holding that testimony may be substantial evidence to support a finding).

7

would accept as adequate to support a conclusion." *Guthrie*, 738 A.2d at 521. While the referee, and thus the Board, made no finding as to the specific date upon which Claimant abandoned work, information in the documents accepted into the record at the hearing, as well as Claimant's testimony and the testimony presented by Employer, fill in these gaps. Claimant indicated in documents submitted to the local UC Service Center, and his testimony, that he was a full-time, permanent employee whose last day of work was November 27, 2019. C.R., Item No. 2 at 1-3 (Claimant Questionnaire); C.R., Item No. 9; Referee's Hearing, 4/29/2020, N.T. at 4; C.R., Item No. 10; Referee's 5/15/2020 Decision, F.F. No. 1. Employer, in its Employer Questionnaire, explained that Claimant was "[a]s[s]igned to work on [November 28, 2019]. He [r]efused to show up." C.R., Item No. 3 at 2. Claimant told Employer that he was not coming in and offered no explanation. C.R., Item No. 9; Referee's Hearing, 4/29/2020, N.T. at 5. On December 10, 2019, Claimant then expressed his availability to return to work on December 16, 2019, nearly two weeks after November 28, 2019. *Id.* at 6, 7.

Claimant did not contest any of these facts or provide any further information to explain how or why a full-time, permanent employee neglected to show up for work for two weeks prior to a scheduled surgery when he was informed by Employer that he was assigned to work. Returning to the substantial evidence definition outlined in *Guthrie*, and considering the aforementioned facts, a reasonable mind could conclude that Claimant abandoned continuing work as of November 27, 2019. As such, substantial evidence of record exists, and we decline to disturb the Board's findings.[6]

---

[6] In his appeal to the Board, Claimant also contested Finding of Fact No. 4, that Employer hired another technician to replace the Claimant, but he fails to address it in his brief.

As to Claimant's argument that the Board erred by evaluating Claimant's claim under Section 402(b) as opposed to Section 402(e) of the Law, Claimant contends that he did not voluntarily resign, but was instead told by Employer that he would be laid off after informing Employer of his impending knee surgery. Claimant argues that he therefore inferred that he was being discharged, and proceeds to analyze in his brief why he did not commit willful misconduct in this case.

"Whether a claimant's separation from employment is the result of a voluntary action or a discharge is a question of law subject to review by this Court and must be determined from a totality of the facts surrounding the cessation of employment." *Watkins v. Unemployment Compensation Board of Review*, 65 A.3d 999, 1004 (Pa. Cmwlth. 2013). "A claimant seeking [UC] benefits bears the burden of establishing either that (1) his separation from employment was involuntary or (2) his separation was voluntary, but he had cause of a necessitous or compelling nature that led him to discontinue the relationship." *Id.* Stated otherwise, to be eligible for UC benefits, a "claimant bears the burden of proving separation from employment, whether voluntary or involuntary." *Id.* To be interpreted as involuntary, meaning a discharge, "the employer's language must possess the immediacy and finality of a firing." *Id.*

In this case, we conclude that the referee and the Board did not err in analyzing this matter under Section 402(b), rather than Section 402(e), of the Law. Employer never took any steps to discipline or discharge Claimant. Further, and contrary to Claimant's assertion that Employer told him he would be laid off, the Board credited the testimony that Employer presented that he never told Claimant that he would be laid off, but rather asked Claimant, in October of 2019, to talk to

9

him when the surgery scheduled for December drew near. N.T. at 5. Claimant continued to work until the end of November of 2019 and then voluntarily left his employment, purportedly for medical reasons, despite the fact that he was scheduled to work on November 28, 2019. When Claimant did not show up on that date, Employer contacted Claimant to see where he was. Even if Claimant thought he might be laid off at some point, Claimant could not have reasonably thought that date was November 28, 2019, when Employer contacted him to determine his whereabouts. According to the facts set forth and found credible by the Board, it appears that Employer was actually attempting to *keep* Claimant employed, rather than lay him off. Accordingly, we conclude that the referee and the Board properly considered whether Claimant had cause of a necessitous and compelling nature for leaving work.

Finally, as to Claimant's argument that the Board erred in concluding that he failed to establish cause of a necessitous and compelling nature to quit, we note that it is the claimant's burden to establish that he left work for cause of a necessitous and compelling nature in order to be found eligible for UC benefits. *Wasko v. Unemployment Compensation Board of Review*, 488 A.2d 388, 389 (Pa. Cmwlth. 1985). We acknowledge that a claimant's "medical condition or health reason may create cause of a necessitous and compelling nature to terminate (or leave) employment voluntarily." *Watkins*, 65 A.3d at 1004 (citing *Deiss v. Unemployment Compensation Board of Review*, 381 A.2d 132 (Pa. 1977)). However, the underlying medical condition or health reason is only relevant if the claimant demonstrates, through competent and credible evidence, that (1) the health reason is of sufficient dimension to compel the employee to quit; (2) the employee informed the employer of the health problem; and (3) the employee is able and

available for work if the employer can make a reasonable accommodation. *Watkins*, 65 A.3d at 1004-05. A claimant's failure to satisfy any one of these conditions will bar a claim for UC benefits. *Dornblum v. Unemployment Compensation Board of Review*, 466 A.2d 747, 749 (Pa. Cmwlth. 1983).

Although Claimant in this case informed Employer of his impending knee surgery, arguably in compliance with the second condition, he submitted nothing to Employer in the form of documentary evidence of his condition or anything taking him out of work after November 27, 2019. In fact, despite notifying Employer of his expected knee surgery that was scheduled for December 2019, Claimant continued to work through October 2019, up until the end of November 2019. Claimant did not present any evidence establishing that his knee condition worsened during that time, such that he could not continue to work past November 27, 2019. To the contrary, in documents submitted to the Board, Claimant expressed that he had no work limitations and that he did not inform Employer of any work limitations prior to his separation. C.R., Item No. 2 at 3. There is also no explanation in the record as to how or why a surgery scheduled for mid-December would necessitate discontinuing work several weeks in advance thereof when Claimant, himself, indicated that he had no work limitations. Claimant simply left after work on November 27, 2019, and, without explanation, did not return. For all of these reasons, the Board did not err in determining that Claimant failed to demonstrate cause of a necessitous and compelling nature for leaving his employment.

Accordingly, the order of the Board is affirmed.

_____
MICHAEL H. WOJCIK, Judge

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

David E. Rosowski,     :
    :
         Petitioner     :
    :
      v.     :   No. 870 C.D. 2020
    :
Unemployment Compensation     :
Board of Review,     :
    :
         Respondent   :

# **O R D E R**

AND NOW, this 20<u>th</u> day of <u>August</u>, 2021, the order of the Unemployment Compensation Board of Review, dated August 13, 2020, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge