Nathaniel Shrieves, Jr.,                          :
                          Petitioner        :
                                            :      No.  93 C.D. 2020
              v.                            :
                                            :      Argued:  November 12, 2020
Unemployment Compensation                   :
Board of Review,                            :
                          Respondent        :


BEFORE:     HONORABLE PATRICIA A. McCULLOUGH, Judge
            HONORABLE ANNE E. COVEY, Judge
            HONORABLE J. ANDREW CROMPTON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  December 11, 2020


              Nathaniel Shrieves, Jr. (Claimant) petitions for review of an adjudication
of the Unemployment Compensation (UC) Board of Review (Board) holding Claimant
ineligible for unemployment compensation benefits under Section 402(e) of the
Unemployment Compensation Law (Law).[1]  Claimant contends that he was denied due
process during the proceedings below and challenges his ineligibility for UC benefits
due to his discharge from work for willful misconduct.  For the following reasons, we
affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).
Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any
week in which his unemployment is due to his discharge from work for willful misconduct connected
with his work.

In November of 2009, Claimant began his employment with Philadelphia Gas Works (Employer) as a "Serviceman 'A' Mechanic or Technician." (Transcript (Tr.), 9/13/19, at 9, Reproduced Record (R.R.) at 9a.) Employer discharged Claimant on July 17, 2019. (Certified Record (C.R.) Item No. 2.) Employer sent Claimant a letter dated July 23, 2019, by regular and certified mail, explaining in detail the reasons why he was fired. *Id.*

Claimant applied for UC benefits on July 21, 2019. The Pennsylvania Department of Labor and Industry, Office of Unemployment Compensation Policy (Department), conducted an investigation. In response to the Department's request for information, Employer indicated in its employer Questionnaire that Claimant was fired for "violation of company workplace violence/threat policy/improper and/or unprofessional treatment of customer" and "falsely record[ing] events of the assignment." (C.R. Item No. 2.) Employer provided the Department with the July 23, 2019 termination letter.

The Department conducted an oral interview of Claimant on August 8, 2019. Claimant stated that he was aware of "the company workplace violence/threat policy and/or improper and/or unprofessional treatment of a customer" policy, but denied he violated it. (C.R. Item No. 3.) The Department explained to Claimant the Employer's position as follows:

> [Employer] states on [June 28, 2019] you were directed to activate gas service at a residence on Media Street in Philadelphia. As part of your assignment you also received special instructions to contact the customer by phone when you were en route to the residence. You did not call the resident at all until you had already driven away from the residence and decided to falsely record in your onboard mobile computer that you could not complete your assignment because you could not gain access to the property.

2

*Id.*

> Claimant denied the allegations, explaining,
>
>> that is not correct[,] it did not occur that way[,] I called the resident while I was at the house and when I went back to the truck to call her she said [she] would be there [in] 20 minutes and I could not wait. She said I cussed her out and threatened her but I did not . . .

*Id.*

When asked why he did not contact the Media Street customer until he was leaving the customer's block and why he falsely reported that he could not gain access to the property, Claimant responded:

> What they are not telling you is that they have a phone issue where it doesn't work and is searching for service and this is not a violation of company policy and I [have] never seen any special instruction to call the [customer] en route to the residence.

*Id.*

Based on its investigation, the Department issued a Notice of Determination finding Claimant ineligible for benefits for violation of Employer's work rule which it concluded constituted willful misconduct. (C.R. Item No. 4.) In that Determination, the Findings of Fact were:

1. Claimant's last day of work was 07/16/2019.

2. Claimant was discharged for violating a rule.

3. The Employer's rule was improper and/or unprofessional treatment of a customer is a major work violation and is subject to termination.
4. Claimant violated the rule.

3

5. Claimant was aware or should have been aware of the rule.

6. Claimant denies violating the rule.

(Notice of Determination, 8/9/19, at 1, C.R. Item No. 4.)

Claimant appealed, claiming that Employer "failed to provide the exact company rule and/or policy [C]laimant actually violated" or demonstrate "that such a 'rule' was in fact a major work violation." (C.R. Item No. 5.) A hearing was scheduled for September 13, 2019. Prior to the hearing, Claimant's counsel requested and received the Department's documents[2] "to understand the allegations against Claimant," and she subpoenaed documents from Employer including: all rules and policies at issue; Employer's Global Positioning System (GPS) data for Claimant's vehicle for the entire day of June 28, 2019; Employer's Advanced Intelligence Management Systems (AIMS) timesheets for Claimant for the entire day of June 28, 2019; Claimant's cellular work phone records for the entire day of June 28, 2019; documents relating to the complaint received by the Media Street customer; and "all documents cited in the July 23, 2019 termination letter." (Letter from Karin Gunter, Esq. to Referee, 9/8/19 at 1-2, C.R. Item No. 4.)

In response to the subpoena, Employer produced the Corporate Discipline Policy effective January 22, 2016, Call Ahead Procedure Bulletin #1492, Call Ahead Procedure Bulletin #367, AIMS Timesheet for June 28, 2019, records for Claimant's work issued cellular phone, and a GPS detail report. (C.R. Item No. 4, Tr. at 8-9, R.R. at 8a-9a.)

At the hearing, Claimant's counsel argued, as a preliminary matter, that Claimant's due process rights were violated because the Department's Notice of Determination failed to describe the specific conduct of Claimant that was in violation

---

[2] Claimant received the Department's file via email on September 5, 2019, which was eight days before the hearing. (C.R. Item No. 4.)

of Employer's rules or policies. (C.R. Item No. 4; Tr. at 5-6, R.R. at 5a-6a.) Counsel argued that her client had "the right, according to case law and procedure, to know the facts when we come in to prepare for the hearing, and the Notice of Determination should have included the facts that were pertinent to what the conduct was, and it does not." (C.R. Item No. 4; Tr. at 9, R.R. at 9a.) Claimant's counsel also objected to the consideration of the July 23, 2019 termination letter as evidence because it contained hearsay. (C.R. Item No. 4; Tr. at 4, R.R. at 4a.) The Referee sustained the hearsay objection, and limited the use of the July 23, 2019 termination letter to prove only the fact that it was created. *Id.*

Employer presented the testimony of its Labor Manager, Jose Delgado, who testified about the events which precipitated Claimant's discharge for "unprofessional treatment of a customer." (C.R. Item No. 4; Tr. at 11, R.R. at 11a.) By way of background, Mr. Delgado testified that Employer has a progressive discipline policy, which is negotiated with the Local 686, Claimant's union. (C.R. Item No. 4; Tr. at 15, R.R. at 15a.) Mr. Delgado explained that in July of 2016, the union negotiated a last chance agreement on behalf of Claimant,[3] which provided in condition Number 2 that "any future violation of the workplace Violence/Threats Policy #003-19 or any major work rule violating the Company's Corporate Discipline Policy shall result in [Claimant's] immediate termination without recourse of the grievance or arbitration procedure." (C.R. Item No. 4; Tr. at 17, R.R. at 17a.)

Mr. Delgado testified that on June 28, 2019, he received a customer complaint about Claimant and he initiated an investigation, which took about two

___

[3] According to the last chance agreement (hearing Exhibit 9), "on May 26, 2016 when, while on duty and wearing a [Employer] uniform, [Claimant] entered the office of a case manager employed by the Women Against Abuse organization . . . closed the door and became aggressive and threatening while trying to obtain information about the mother of his children, a possible resident in . . . [the] shelter." (C.R. Item No. 4.)

weeks to complete. (C.R. Item No. 4; Tr. at 11-12, R.R. at 11a-12a.) Based on the investigation, Employer concluded that Claimant violated a "major work rule" by "fail[ing] to follow [Employer's] [C]all [A]head procedure" on June 28, 2019, while conducting a service call at a customer's residence on Media Street. (C.R. Item No. 4; Tr. at 12, R.R. at 12a.) Mr. Delgado explained that the Call Ahead procedure requires technicians to "call the customer before going to the work order" and to follow whatever "special instructions [are] required by the customer prior to . . . arrival to the job." (C.R. Item No. 4; Tr. at 12-13, R.R. at 12a-13a.) Mr. Delgado testified that Claimant was made aware of the Call Ahead procedure "on the first day of cadet training, which is his first promotion prior to becoming a Serviceperson A." (C.R. Item No. 4; Tr. at 13, 18-19, R.R. at 13a, 18a-19a.) Mr. Delgado further testified that on the particular day in question, Claimant also received an AIMS system special instruction, which indicated "in all caps" to "please, call when en route." (C.R. Item No. 4; Tr. at 14, R.R. at 14a.) He explained that any special reported requests by a customer are noted in the comments section of the AIMS system special instructions. Those can be for example, a request to call ahead, or to pick up a key at another location. *Id.*

Mr. Delgado clarified that technicians must call the customer when en route pursuant to the Call Ahead procedure, even if there is not a specific request, i.e., AIMS system special instruction, from the customer to call ahead. (C.R. Item No. 4; Tr. at 21, R.R. at 21a.) Mr. Delgado recounted how his review of Claimant's timesheet report, GPS report, and phone logs revealed that Claimant did not call the customer before he arrived at her residence, but called her after he had already pulled away. (C.R. Item No. 4; Tr. at 19-24, R.R. at 19a-24a.) The GPS report (Exhibit 3) showed that Claimant's vehicle arrived at the Media Street location at 1:23 p.m. and started moving at 1:39 p.m. (C.R. Item No. 4; Tr. at 24, R.R. at 24a.), and the phone records indicated that Claimant called the Media Street customer at 1:40 p.m., after he left. *Id.*

6

There was no indication in the phone records that Claimant called the customer at any time before that. *Id.*

Mr. Delgado testified that Claimant was interviewed about the June 28, 2019 incident, at his discipline hearing on July 16, 2019, in the presence of his union representatives. (C.R. Item No. 4; Tr. at 12, R.R. at 12a.) Mr. Delgado prepared a memorandum summarizing the interview. He explained that during the interview, Claimant admitted that he did not call the customer prior to his arrival per the Call Ahead procedure or per the AIMS system special instruction from the customer. (C.R. Item No. 4; Tr. Ex. 6 at 1, R.R. at 51a.) Claimant said that as he approached the property a woman across the street informed him that the customer just left. *Id.* He then called the customer who stated that her husband would be there in about 20 minutes. *Id.* Claimant told the customer that she would have to reschedule. *Id.* Claimant also explained that he had been at the location for 17 minutes because he was talking to a group of people at the corner because they believed he was there to shut off the gas. *Id.* Following the interview, Employer concluded that Claimant had violated his last chance agreement, a major work rule violation by failing to follow the Call Ahead procedure. (C.R. Item No. 4; Tr. at 12, R.R. at 12a.) When asked to summarize why Claimant's employment was terminated, Mr. Delgado explained that Claimant was terminated for unprofessional treatment of a customer, which is a major work rule violation, and that the unprofessional treatment was the failure to follow the Call Ahead procedure. (C.R. Item No. 4; Tr. at 15, R.R. at 15a.)

On cross-examination, Claimant's counsel asked Mr. Delgado to explain his recollection of Claimant's explanation of his encounter with the group of people on the corner of Media Street and 60th Street who thought they smelled natural gas. (C.R. Item No. 4; Tr. at 28, R.R. at 28a.) Employer's counsel objected to the question on the grounds that it was not relevant to the question of whether Claimant violated the

7

Call Ahead procedure. While that objection was pending, and during counsel's cross-examination of Mr. Delgado, the Referee left the room to inform the receptionist that she was going to be late for her next hearing, and the following exchange occurred:

> R [Referee] . . . Excuse me. I'm going to take – it's 10:09. I had a hearing that was scheduled to begin at 9:45. I'm going to go out; speak to the receptionist about the hearing schedule. I have another one that was scheduled to begin at 10:15. I'll let them [know] we're going to be late. So, just give me a moment. I'll be right back, and I'll leave the recorder on just so it's clear that there's no discussion pending my -- while I'm absent.
>
> CL [Claimant's counsel] Objecting to you talking to the witness while he's being cross-examined.
>
> EL [Employer's counsel] Oh. Yeah, sorry. I -- I will state what occurred when the Referee comes back into the room. I'm sorry. I forgot that it was [inaudible]. Referee, just so that it's clear for the record, I did forget that my witness was the one being cross-examined when you left the room, and I did ask him a question. He didn't provide a response, but I can reiterate what I asked him for the record if necessary.
>
> R [Referee] All right. So, it's 10:10. I'm back in the room. And, it was Ms. Gunter [Claimant's counsel] who was cross-examining Mr. Delgado. What did you do while I was out, Ms. Zahorchak [Employer's counsel]?
>
> EC [Employer's counsel] I had whispered to Mr. Delgado was it possible that he -- which I think is the point Ms. Gunter [Claimant's counsel] was trying to get to anyway, was it possible that [Claimant] could have received this work order after he already been en route to the work order, and he didn't respond because Ms. Gunter [Claimant's counsel] objected.
>
> R [Referee] Okay. Ms. Gunter [Claimant's counsel], do you want him to respond to that question or do you want to ask the question or do you want to just make your objection?

CL  [Claimant's counsel] I just want to make my objection because he was under cross-examination. We can move on.

R  [Referee] Do you want him to answer that question?

CL  [Claimant's counsel] It's not my question, so, no.

R  [Referee] Well, I'm really curious so I'll ask the question. Mr. Delgado, could [Claimant] have gotten the order update while he was sitting there in his truck?

EW [Mr. Delgado].   He may have gotten the order, but he can -- he can't go en route to another order until he completes that order. So, they can't force the order on him, even if it's an emergency.

(C.R. Item No. 4; Tr. at 28-29, R.R. at 28a-29a.)

When the hearing resumed, Mr. Delgado acknowledged on cross-examination that Employer's corporate discipline policy[4] (Exhibit 2) did not indicate that the failure to comply with Call Ahead procedure[5] would be considered a major work rule violation and/or an improper and unprofessional treatment of a customer. (C.R. Item No. 4; Tr. at 30-31, R.R. at 30a-31a.)  Mr. Delgado also admitted that the Call Ahead procedure (Exhibits 10 and 11) did not expressly state that failure to comply with it would result in discipline.  *Id.*  Mr. Delgado clarified, however, that it is a company policy and Employer requires its servicemen to follow it.  *Id.*  He stated that the servicemen are trained that they "have to follow procedures or you'll be disciplined. They're instructed on that."  (C.R. Item No. 4; Tr. at 31, R.R. at 31a.)

---

[4] Employer's Corporate Discipline Policy, which Claimant admitted he signed, was marked as Exhibit 2 and accepted into evidence.  (C.R. Item No. 4; Tr. at 8, R.R. at 8a.)

[5] Employer's Call Ahead Procedure Bulletin #1492 (hard copy) was marked as Exhibit 10. Employer's Call Ahead Procedure Bulletin #367 (electronic version) was marked as Exhibit 11 and accepted into evidence.  (C.R. Item No. 4; Tr. at 17-18, R.R. at 17a-18a.)

9

Claimant testified on his own behalf. He stated that he tried calling the customer when he was en route about 5 or 10 minutes away, but he could not get reception on the work phone Employer provided him. (C.R. Item No. 4; Tr. at 33, R.R. at 33a.) He stated that when he arrived at the location, there was no parking. *Id.* He parked his truck at the corner of Media Street and 60th where he encountered several individuals who were concerned about the smell of gas. *Id.* After speaking to them and confirming it was not natural gas, he drove his truck and parked it in front of the Media Street customer's residence. *Id.* He knocked on the door, and was informed by a neighbor that the owner just left. *Id.* He went back to his truck which was parked in front of the residence and called the customer who told him that she needed 20 minutes to a half-hour to get there. (C.R. Item No. 4; Tr. at 34, R.R. at 34a.) Claimant admitted that there was a rule which required him to call a customer before arriving at her residence. (C.R. Item No. 4; Tr. at 35, R.R. at 35a.) In response to questions by the Referee, Claimant acknowledged that there was a rule that required him to call ahead, and that regardless of whether the customer asked for it (which would be in the AIMS system special instructions), "the rule is call before you get there." *Id.*

By decision mailed September 13, 2019, the Referee affirmed the Department's determination that Claimant was ineligible for benefits under Section 402(e) of the Law. The Referee made the following findings of fact:

1. The Claimant was employed from November 23, 2009 until July 16, 2019; at the time of separation, he was working full-time as a Serviceman A Technician and was earning $1,392.80 per week.

2. The Employer has a "Call Ahead Procedure" that requires technicians to contact the customer before physically visiting the customer to provide service to the customer.

10

3. The Claimant was or should have been aware of the Employer's Call Ahead Procedure.

4. The Employer has a Discipline Policy which provides for discipline of employees who violate the Employer's rules and standards; under the policy, work rule violations are categorized as minor violation under the Employer's Discipline Policy.

5. The Claimant was or should have been aware of the Employer's Discipline Policy.

6. The Employer has implemented an electronic system known as "AIMS" that is used to provide information to field employees such as Technicians with information concerning work assignments, including specific customer requests concerning the work to be provided.

7. The Claimant was or should have been aware of the Employer's AIMS system.

8. On June 28, 2019, the Claimant was assigned to provide service to a customer on Media Street.

9. On June 28, 2019 prior to arriving at the customer's address on Media Street, the Claimant endeavored to contact the customer on Media Street using an Employer-supplied cell phone; however, he was unable to do so using the cell phone.

10. On June 28, 2019, the Claimant went to the customer's address and knocked on the door to inform the customer that he was there to provide service to the customer, but the customer did not answer the door.

11. The Claimant did not contact the customer before physically visiting the customer to provide service to the customer.

12. The Claimant was discharged from his position for failure to adhere to the Employer's Call Ahead Procedure.

13. On July 11, 2016, the Claimant signed a "Last Chance Agreement" which provided that "any future violation of . . . any major work rule violating the Company's Corporate Discipline Policy shall result in [the Claimant's] immediate termination without recourse of the grievance or arbitration procedure."

(Referee Decision, 9/13/19, at 1-2, C.R. Item No. 9.)

Based on these findings, the Referee concluded that Claimant failed to demonstrate that he had good cause for his actions which rose to the level of willful misconduct.

Claimant appealed to the Board. He asserted that Employer did not establish willful misconduct because Employer failed to prove that its policies and procedures stated that a failure to follow the Call Ahead procedure would result in disciplinary action, was a major work rule violation, or constituted improper and/or unprofessional treatment of a customer. (C.R. Item No. 11.) He argued that Employer did not demonstrate that he intentionally or deliberately violated the Call Ahead procedure because he testified that he could not get phone reception until he arrived at the Media Street customer's residence. *Id.* Additionally, Claimant alleged that he was denied due process because the Department's Notice of Determination did not include any facts explaining what exactly he did to violate Employer's work rule. *Id.* He also objected to the Referee's use of "the Employer's 'Call Ahead Procedure' as the 'rule' violated and not the 'special instructions' located in the AIMS system, which [was] the only the basis the [Department] discussed with Claimant and presumably used in its Notice of Determination." *Id.* Lastly, Claimant argued that he received an unfair hearing and was "prejudiced" because Employer's counsel "coached" Mr. Delgado when the Referee left the room. *Id.*

By decision mailed December 17, 2019, the Board adopted the findings of fact made by the Referee and affirmed her decision. The Board credited Mr.

12

Delgado's testimony that Employer requires employees to call ahead for every service call and the failure to do so constituted unprofessional treatment of a customer, which was a major rule violation. (Board Decision, 9/17/19, at 1.) The Board also credited Mr. Delgado's testimony that Claimant was aware of the Call Ahead procedure. *Id.* The Board rejected Claimant's argument that the Referee relied on a different work policy than the one relied on by the Department, noting that Mr. Delgado credibly testified that Employer discharged Claimant for failing to follow the Call Ahead procedure, which is a major rule violation. *Id.*

The Board rejected Claimant's contention that he was denied due process, because Claimant acknowledged during the Department's oral interview that his discharge was related to the events of the June 28, 2019 service call. *Id.* The Board concluded, therefore, that Claimant was aware of the factual basis of his discharge throughout the process. *Id.* Regarding Claimant's assertion that he had good cause for failing to contact the Media Street customer prior to arriving at her address, the Board found that even if Claimant's cell phone was unable to place a call when leaving the prior service call, Claimant did not act reasonably in failing to make further attempts to call the customer prior to knocking on her door. *Id.* at 1-2.

Finally, the Board rejected Claimant's argument that he did not receive a fair hearing. The Board found no evidence in the record that Employer's counsel coached Mr. Delgado during cross-examination, and concluded that in any event, it conducted a *de novo* review of the Referee's adjudication and any real or perceived due process violations were cured. *Id.* at 2. Accordingly, the Board adopted and incorporated the Referee's findings and conclusion that Claimant was ineligible for UC benefits under section 402(e) of the Law.

13

Claimant now petitions for this Court's review of the Board's adjudication.[6] He raises five issues,[7] which we have consolidated and restated as

---

[6] Our review determines whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial competent evidence. *Seton Company v. Unemployment Compensation Board of Review*, 663 A.2d 296, 298 n.2 (Pa. Cmwlth. 1995).

[7] Claimant's Statement of Questions Involved are as follows:

> 1. Whether Claimant's due process rights were violated and the Board committed an error of law in affirming the Referee's decision where the August 9, 2019 Notice of Determination ("Notice") failed to identify which policy Claimant allegedly violated and which of his actions [was the] basis for this violation before attending the September 13, 2019 referee hearing?
>
> 2. Whether Claimant's actions rose to the level of willful misconduct where the Employer failed to give him prior notice that failure to follow the Field Service Department's ("FSD") Call Ahead Policy is deemed a major work rule violation and/or deemed as improper and/or unprofessional treatment of a customer that could result in termination and/or disciplinary actions?
>
> 3. Whether Claimant's actions rose to the level of willful misconduct where the Employer changed the reason for discharging Claimant, from failure to follow "special instructions" in the AIMS system to failure to call ahead via the FSD Call Ahead policy?
>
> 4. Whether Claimant's actions rose to the level of "intentional or deliberate" where Claimant's uncontested testimony shows (a) the Employer issued cellphone service was faulty, (b) there was a short distance between his prior service call site and the service call site at issue, (c) Claimant did make a second call to the customer, (d) Claimant encountered a potential gas leak complaint; and (e) where the FSD call ahead procedures do not address the facts of this case, i.e., faulty company provided phone service preventing compliance with call ahead policies?
>
> 5. Whether Claimant's due process rights were violated when the Referee left the hearing room allowing Employer counsel to question Employer witness, while the latter was still under cross-examination, regarding the AIMS system, which Employer specifically stated was not the basis of its willful misconduct action?

(Claimant's Brief (Br.) at 1-3.)

14

follows: (1) whether the Board erred in finding that Claimant's right to due process was not violated in the proceedings below; and (2) whether the Board erred in finding that Claimant's violation of Employer's Call Ahead procedure constituted willful misconduct?

## Discussion

In UC cases, the initial burden of proving willful misconduct lies with the employer. *Oyetayo v. Unemployment Compensation Board of Review*, 110 A.3d 1117, 1121 (Pa. Cmwlth. 2015). Although not defined in the Law, willful misconduct has been interpreted to include:

> (i) wanton and willful disregard of the employer's interests; (ii) a deliberate violation of the employer's rules; (iii) a disregard of the standards of behavior that the employer rightfully can expect from its employees; and (iv) negligence that manifests culpability, wrongful intent or evil design, or an intentional and substantial disregard of the employer's interests or the employee's duties and obligations.

*Id.*

Where an employer seeks to deny UC benefits based on a work rule violation, the employer must show that the rule existed; that the rule was reasonable; and that the claimant was aware of and violated the rule. *Id.* If the employer makes that showing, the burden shifts to the claimant to show good cause for her conduct. *Id.*

Further, "it is well-settled that the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight." *Serrano v. Unemployment Compensation Board of Review*, 149 A.3d 435, 439 (Pa. Cmwlth. 2016) (citing *Peak v. Unemployment Compensation Board of Review*, 501 A.2d 1383, 1388 (Pa. 1985)). "The Board is also empowered to resolve conflicts in the evidence." *Serrano*, 149 A.3d at 439 (citation omitted). "Questions of credibility and the resolution of evidentiary conflicts are within the sound discretion of

15

the Board, and are not subject to re-evaluation on judicial review." *Id.* (quoting *Peak*, 501 A.2d at 1388). Accordingly, "[t]his Court's review of a decision by the Board does not permit it to reweigh the evidence or substitute its own findings for those made by the Board." *Chartiers Community Mental Health and Retardation Center v. Unemployment Compensation Board of Review*, 134 A.3d 1165, 1173 (Pa. Cmwlth. 2016).

## 1. **Due Process**

Claimant contends that the Board erred when it found that his constitutional due process rights were not violated. Claimant argues that he was denied due process because (1) the Referee considered additional facts that were not delineated in the Department's Notice of Determination; (2) the Notice of Determination did not expressly apprise him of the reason he was discharged and, therefore, his counsel was "ill-equipped" at the hearing to defend against the charges; and (3) the Referee excused herself from the hearing room during which time Employer's counsel "coached" Mr. Delgado.[8] (Claimant's Br. at 10-11.)

The essential elements of due process are notice and an opportunity to be heard in a full and fair hearing before an impartial decision maker. *Leone v. Unemployment Compensation Board of Review*, 885 A.2d 76, 80 (Pa. Cmwlth. 2005). Due process of law, of course, must be afforded in unemployment compensation proceedings. *Knox v. Unemployment Compensation Board of Review*, 317 A.2d 60 (Pa. Cmwlth. 1974).

### a. **Notice of Determination**

Relying on *Sterling v. Unemployment Compensation Board of Review*, 474 A.2d 389 (Pa. Cmwlth. 1984), and *Dobryk v. Unemployment Compensation Board*

---

[8] Where a constitutional violation, such as the alleged violation of Claimant's right to due process, is at issue, the proper standard of review is *de novo*. *Carbondale Area School District v. Fell Charter School*, 829 A.2d 400 (Pa. Cmwlth. 2003).

*of Review* (Pa. Cmwlth., No. 364 C.D. 2016, filed February 24, 2017) (unreported), Claimant contends that he had no notice that the Referee would rely on additional charges not within the Notice of Determination. He contends that he only received notice that he failed to call the customer when en route to the property based on her "special instructions." According to Claimant, the "special instructions" or AIMS policy is the policy the Department interviewed him about and presumably the one used to form the basis of his ineligibility for benefits status. He asserts that at the hearing, however, "Employer raised a new policy it alleged Claimant violated, that is, the [] Call Ahead policy and not failure to call the customer en route to the property based on the 'special instructions.'" (Claimant's Br. at 9.) He argues that "nothing in the [Department's] interview or on the Notice [of Determination] implicated the [] Call Ahead policy, which is separate from the customer 'special instructions.' Nothing in the [Department's] interview gave Claimant notice of any alleged actions implicated Employer's workplace violence and/or threat policies." *Id.* He claims his due process rights were violated due to this inconsistency and lack of notice, which led to his counsel being ill-prepared at the hearing.

As an initial matter we note that Section 101.87 of the Board's Regulations specifies that, "[i]n hearing the appeal [from the Department's determination,] the tribunal shall consider the issues expressly ruled upon in the decision from which the appeal was filed." 34 Pa. Code §101.87. Stated another way, "the Board may only consider the nature of the alleged willful misconduct as delineated in the [Department's] determination notice." *Hanover Concrete Co. v. Unemployment Compensation Board of Review*, 402 A.2d 720, 721 (Pa. Cmwlth. 1979). The purpose of this regulation is to prevent a claimant from having to defend or explain his conduct without fair warning and an opportunity to prepare. *Anthony v. Unemployment Compensation Board of Review*, 506 A.2d 501, 503 (Pa. Cmwlth. 1986); *Goodman v.*

17

*Unemployment Compensation Board of Review*, 447 A.2d 1127, 1128 (Pa. Cmwlth. 1982). "To allow a critique of other conduct against which charge the employee is unprepared to defend or explain is fundamentally unfair and absent mutual consent of its consideration, is prohibited." *Sterling*, 474 A.2d at 391 (quoting *Hanover*, 402 A.2d at 721.) However, we have held that remand is unnecessary when the critical factual basis on which eligibility turns remains the same and there is no shifting of the burden of proof, because there is no surprise or prejudice to a party that necessitates a remand. *Henderson v. Unemployment Compensation Board of Review*, 77 A.3d 699, 723 (Pa. Cmwlth. 2013).

In *Sterling*, according to the notice of determination, the claimant was discharged for giving unauthorized prescription discounts in violation of company policy. On appeal, however, the Board determined that the claimant was discharged for violations of company policies which prohibited giving prescription discounts without properly completing records, consuming candy and soda without payment therefor, and taking money out of the register to replace the money with coupons. 474 A.2d at 390. The claimant argued that he was denied due process because the employer raised new facts for the first time at a hearing before the referee that were not included in the notice of determination. *Id.* He contended that his rights to due process were violated because he had no prior notice that he would be confronted with those additional facts. *Id.* This Court agreed that the notice of determination was insufficient to provide proper notice of certain charges against the claimant. *Id.* We remanded for a new disposition, stating:

> It has long been accepted that the constitutional guarantee of due process of law is equally applicable to administrative proceedings as it is to judicial proceedings. Included in this concept of due process is the requirement that such notice must at the very least contain a sufficient listing and

18

> explanation of any charges so that the individual can know against what charges he must defend himself if he can. Thus notice is integrally linked to the right to be heard, for without notice, litigants are ill-equipped to assert their rights and defend against claims.

*Id.* (quotation marks and citations omitted).

In *Dobryk*, the claimant filed for unemployment compensation. His employer submitted information to the Department, stating that the claimant voluntarily quit because he failed to report to work between November 20, 2014, through December 1, 2014. *Id.*, slip op. at 2. The Department issued a notice of determination finding that the claimant "voluntarily quit because he failed to report to work between 11/20/14 through 12/1/14." *Id.* Based on, *inter alia*, that finding, the notice of determination informed the claimant that he was being denied benefits under Section 402(b) Law. *Id.*, slip op. at 3.

The claimant appealed and appeared at the hearing *pro se* with documentary evidence detailing his work injury, medical treatment, and leave of absence during the period of time which had been identified in the notice of determination as the basis for his ineligibility for unemployment benefits. *Id.*, slip op. at 7. However, at the hearing, his employer presented an entirely new factual scenario which allegedly took place at a later time, and the referee based its denial of UC benefits on those events. This Court concluded that because the claimant had no notice that these later events could form the basis for denying him unemployment compensation, the notice deprived the claimant due process of law. *Id.*, slip op. at 8.

This situation is not the same as *Sterling* or *Dobryk*. Here, Claimant cannot establish surprise or prejudice. There is no question that the Referee considered the same issues that were decided by the Department. The critical factual basis upon on which eligibility turned was the same before both tribunals, i.e., Claimant's failure

to call the Media Street customer on June 28, 2019, before he arrived at her residence. The special instructions in the AIMS system and the Call Ahead procedure were the same, i.e., call while en route to the customer's residence. Further, Claimant's conduct violated both rules at the same time. Claimant could not violate the "special instruction" in this situation without violating the Call Ahead procedure because the offending conduct was the same, i.e., failure to call customer ahead of arrival. Thus, if, as Claimant contends, he understood that he was denied benefits based on his failure to call the Media Street customer before he arrived at her residence, then he knew or should have known that he was being denied benefits for violating the Call Ahead procedure. It would have been unreasonable for him to believe he was being denied benefits for one policy but not the other when the conduct violated both policies equally.

Moreover, the record demonstrates that Claimant was aware prior to the hearing why he was denied UC benefits, what rule he violated, and the conduct which formed the basis of his termination. Claimant's interview response indicated that he was aware that both rules were at issue when he stated to the Department's interviewer "this is not a violation of company policy and I [have] never seen any special instruction to call the [customer] en route to the residence." (C.R. Item No. 3.) Further, Employer informed Claimant in its July 23, 2019 letter of termination that the

> Field Service Department procedure for scheduled customer appointments is to call in advance of arriving at the location of an assignment to ensure that someone will be present at the residence upon your arrival. Failure or refusal to follow this procedure constitutes "improper and/or unprofessional treatment of a customer" - a major work rule violation under the Company's Corporate Discipline Policy. Moreover, your behavior also constituted a violation of the Last Chance Agreement MOA [Memorandum of Agreement] you signed on July 11, 2016. As a result of the aforementioned, your

20

employment at [Employer] is terminated effective at the close of business July 17, 2019.

(C.R. Item No. 2.) Claimant and Employer both acknowledged throughout the hearing that Employer terminated Claimant's employment for violating Employer's Call Ahead procedure by failing to call the Media Street customer before knocking on her door.[9]

Accordingly, for these reasons, we are unpersuaded by Claimant's contention that based on the Department's Notice of Determination, he only received notice that Employer was charging him with the failure to call the customer when en route to the property based on the customer's instructions contained in the AIMS system "special instructions" – and not Employer's Call Ahead procedure.[10]

### b. Full and Fair Hearing

Next, Claimant contends that he was denied a full and fair hearing because Employer's counsel "coached" her witness, Mr. Delgado. Claimant argues that counsel's question to Mr. Delgado "absolutely implicated a suggested answer." (Claimant's Br. at 11.) He also argues that the Referee deprived him of an orderly

---

[9] Although Claimant's counsel objected to the Referee's consideration of the July 23, 2019 termination letter based on hearsay, the letter is still part of the Department's file which was provided to counsel before the hearing. Claimant has cited to no authority, and we have found none, which precludes us from considering the contents of the letter for the separate purpose of determining whether Claimant had notice of the reasons the Department found him ineligible for UC benefits. Furthermore, Claimant does not contend that he was unaware that the basis for the termination of his employment was his alleged violation of the Call Ahead procedure.

[10] We also reject Claimant's argument that he was prejudiced because his counsel was somehow prevented from subpoenaing documents from Employer regarding the Call Ahead procedure. (Claimant's Br. at 10.) Contrary to Claimant's version of events, Claimant's counsel subpoenaed all documents cited in the July 23, 2019 termination letter "and relied upon by the [Department] in its Notice of Determination." (Letter from Karin Gunter, Esq. to Referee, 9/8/19 at 1-2, C.R. Item No. 4; R.R. at 37a-38a.) In response to the subpoena, Employer produced, *inter alia*, the Call Ahead Procedure Bulletin #1492, and Call Ahead Procedure Bulletin #367, well before the hearing. (C.R. Item No. 4, Tr. at 8-9, R.R. at 8a-9a.)

21

proceeding, which is guaranteed by due process, by not allowing his counsel to complete her argument and by leaving the hearing room. (Claimant's Br. at 12.)

After reviewing the record, we find no error in the Board's conclusion that a full and fair hearing was conducted by the Referee and that Claimant was not denied due process. The question that was asked while the Referee left the hearing room was on the record and did not constitute improper "coaching." Counsel's question pertained to whether the special instructions in the AIMS system were generally received by the servicemen technicians on a rolling basis. The Referee allowed Mr. Delgado to answer the question. Aside from stating an objection, Claimant's counsel did not request a new hearing, and there is no evidence that she was in any way hampered from continuing to freely cross-examine Mr. Delgado as she desired. Further, Claimant has not established that he was prejudiced in any way by the incident. Neither the subject matter of the question, nor Mr. Delgado response, had any material effect on the outcome of the hearing, and Claimant has not argued that it did. As to Claimant's contention that his attorney was precluded from completing her argument because the Referee left the room, we reject this argument as well. There is no evidence that counsel was prohibited from completing an argument she was trying to make.

## 2. **Willful Misconduct**

We next address Claimant's contention that the Board erred in concluding that his actions rose to the level of willful misconduct. Claimant first argues that Employer never established that an employee's failure to comply with the Call Ahead policy was a major work rule violation punishable by disciplinary action up to and including termination. He points out that nothing in Employer's Corporate Discipline Policy states failure to comply with the Call Ahead procedure would be considered a work rule violation and/or an improper and unprofessional treatment of a customer.

22

(Claimant's Br. at 13-14.) He also contends that he was never told that violation of the Call Ahead procedure constituted unprofessional treatment of a customer.

The findings of the Referee as adopted by the Board indicate that Employer has a Call Ahead procedure, which requires its technicians to contact the customer before physically visiting the customer to provide a service. (Findings of Fact (F.F.) No. 2.) Additionally, the Board found that Employer implemented the AIMS system to provide information to technicians with information concerning work assignments, including specific customer requests. The Board also found that Claimant knew or should have known about the Call Ahead procedure, and the AIMS system. (F.F. Nos. 3, 7.) Importantly, the Board's findings also demonstrate that "Claimant signed a 'Last Chance Agreement' which provided that 'any future violations of . . . any major work rule violating the Company's Corporate Discipline Policy shall result in [the Claimant's] immediate termination without recourse of the grievance or arbitration procedure.'" (F.F. No. 13.)

Claimant asserts that he was unaware that he could be terminated for violating a major work rule. However, the Board did not find Claimant's testimony to be credible. To the contrary, the Board, as the arbiter of credibility, instead credited Mr. Delgado's testimony that Employer required all employees to call ahead for every service call and the failure to do so constituted unprofessional treatment of a customer, which is a major rule violation. Claimant's assertion that he was unaware that he could be terminated is not only contrary to the Board's credibility determination, but is also unreasonable. Claimant's union negotiated a last chance agreement which clearly notified him that he could be terminated for violating any major work rule.

Simply stated, the Board found that Claimant knew or should have known about the AIMS system special instructions from the Media Street customer and the Call Ahead procedure. The Board also found that Claimant was party to a last chance

23

agreement, and that the violation of that agreement would result in Claimant's termination. The Board accepted Mr. Delgado's testimony as credible that failing to call ahead for every service call is a major rule violation. Based on the Board's findings and credibility determinations, we must conclude that Claimant knew he could be terminated for violating these policies.

Moreover, the fact that Employer fired Claimant after violations of its Call Ahead procedure without first warning him that this was a possible consequence is irrelevant. "There is no requirement in the Law . . . that an employee be first warned that a deliberate violation of an employer's work directive could result in termination." *Graham v. Unemployment Compensation Board of Review*, 840 A.2d 1054, 1058 (Pa. Cmwlth. 2004) (noting that the claimant was aware that his job required him to relocate and that his failure to do so was willful misconduct; employer did not have to show that he was warned that he would be fired if he did not comply with the relocation requirement).

Lastly, Claimant asserts that Employer failed to establish that his violation of the Call Ahead procedure was deliberate or intentional. He argues that his uncontradicted testimony established that he had good cause for violating the rule because (1) he could not call the customer in advance because he did not have cellular service when he was en route to the customers house; and (2) there were "intervening events" that occurred once he arrived at the job site that prevented him from calling the customer upon his arrival. First, the Board did not credit Claimant's testimony with regard to why he failed to call the Media Street customer before he arrived at her house. This Court may not disturb those credibility determinations. *Serrano*, 149 A.3d at 439. In addition, neither of these arguments explain or justify Claimant's failure to contact the customer via telephone until after he had knocked on her door and attempted to

24

gain access to her property, and thus cannot constitute good cause for disregarding a work rule of which he was aware.

Accordingly, we affirm the order of the Board denying Claimant benefits on the basis that he is ineligible due to his willful misconduct.

_____
PATRICIA A. McCULLOUGH, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Nathaniel Shrieves, Jr., :
            Petitioner :
             : No. 93 C.D. 2020
      v. :
             :
Unemployment Compensation :
Board of Review, :
            Respondent :

## ***ORDER***

AND NOW, this 11th day of December, 2020, the adjudication of the Unemployment Compensation Board of Review dated December 17, 2019, is hereby AFFIRMED.

 

                                _____

                                PATRICIA A. McCULLOUGH, Judge