IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobbie Lou Clark,                     :
                Petitioner       :
                                  :
        v.                     :     No.  313 C.D. 2020
                                :     Submitted:  February 8, 2021
Unemployment Compensation     :
Board of Review,                   :
                Respondent     :

BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                 FILED:  March 23, 2020


            Bobbie Lou Clark (Claimant) petitions for review from the order of the Unemployment Compensation Board of Review (Board) that deemed her ineligible for unemployment compensation (UC) benefits under Section 402(e) of the UC Law (Law)[1] (relating to willful misconduct).  Claimant argues that the Board's finding that she committed willful misconduct based on a conflict with her supervisor, which involved yelling and an exchange of harsh words insulting supervisor's decisions within the hearing of other employees, was not supported by substantial evidence.  She asserts that the Board erred in concluding that she violated standards of conduct when the witnesses did not identify a specific policy as grounds for her termination.  She also challenges the Board's credibility determinations.  Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. §802(e).

# I. Background

In her 33-year tenure with Washington Health Systems (Employer), Claimant worked most recently as an operations manager. Claimant's difficulties at work began when Employer replaced her supervisor, the director of maintenance, and appointed an interim director (Interim Director) in July 2019. On two occasions prior to the incident that culminated in her discharge, Claimant loudly criticized Interim Director's decisions. *See* Bd. Op., 2/19/20, Finding of Fact (F.F.) No. 5. The first conflict occurred weeks after his promotion, when Claimant objected to his removal of certain information privileges she used for her job; the second conflict occurred in late September 2019, when Claimant characterized his staffing decision as "batsh** crazy." *Id.* Employer did not discipline Claimant for her comments.

On September 25, 2019, Claimant was involved in a series of heated exchanges with Interim Director, which resulted in her termination (Incident). The Incident began when Claimant did not attend a high-level meeting with Interim Director and other managers, including the Vice President of Operations, regarding certain hospital deficiencies. Instead, Claimant scolded Interim Director over the voice communication system (Vocera), for locking her thumb-drive that had the only copy of a fire door report in his office, as he gave away his paper copy. F.F. No. 9. Claimant's communication was loud, angry, and used abusive and disrespectful language over Vocera. She resumed her rebuke in person, yelling at Interim Director in the hall and in his office, where she accused him of undermining her authority and ability to do her job. Days later, Employer suspended Claimant for the Incident, which subsequently was converted to a termination as of October 1, 2019. Claimant filed an application for UC benefits, which the local UC service center granted. Employer appealed and requested a hearing before a referee.

2

At the hearing, both parties were represented by counsel. Claimant testified on her own behalf about the Incident and her relationship with Interim Director. Claimant emphasized her long tenure with Employer without any prior discipline or disputes before the replacement of her prior supervisor with Interim Director, who she believed was actively undermining her. Employer presented the testimony of several witnesses, most of Employer's management team, including Interim Director and the senior Human Resources (HR) partner to whom Claimant complained about Interim Director prior to the Incident. Employer also submitted the Employee Handbook, stating its standards of conduct, and a signed acknowledgement of Claimant's receipt of these standards, into evidence. At all relevant times, Employer had a standard of conduct requiring employees to use a courteous and respectful voice when speaking with coworkers. *See* F.F. No. 2.

The referee upheld the initial eligibility determination of the local UC service center. Employer appealed the referee's decision to the Board. *See* Certified Record (C.R.), Item No. 13. Both parties filed briefs with the Board.

The Board made its own findings based on the record the referee developed, and, based on those findings, it reversed the referee and determined that Claimant was ineligible for UC benefits based on willful misconduct. Relevant here, the Board concluded that "[E]mployer had specific standards of behavior governing communications, which [Claimant] violated in several respects." Bd. Op. at 6. Specifically, the Board found that Claimant acknowledged receipt of Employer's standards of behavior, which instructed employees to: "recognize that tone of voice is an important part of communication; listen and respond to everyone in a way that shows we care and that they are important to us; assume people are listening to 'Vocera' communications . . . respect colleagues and treat them with dignity; and

3

always act in a friendly, polite and courteous manner." F.F. No. 2. Also, the Board found Claimant's job description included the essential functions of "respectful communication skills when interacting with other team members." *Id.*

The Board found Interim Director admonished Claimant on two occasions prior to the Incident, in July and September of 2019, for screaming at Interim Director, and calling his decision to use five electricians on Sundays "batsh\*\* crazy." F.F. No. 5. As to the Incident on September 25, 2019, the Board found that Claimant scolded the Interim Director for locking the thumb-drive of a fire door report in his office over Vocera, which could be heard by other employees. F.F. No. 9. Further, Claimant accused Interim Director of "deliberately trying to make her look bad again. [Claimant's] communication to the [I]nterim [D]irector was rude, abusive, and disrespectful; she continued to chew him out and persisted in asking him about the thumb-drive" while he was in a meeting with the Vice President. F.F. No. 9. The Board also found:

> After the meeting, [Claimant] screamed at the [I]nterim [D]irector in the maintenance area, accused him of playing games, complained about him taking away permissions she needed for her work, and otherwise engaged in disrespectful and aggressive behavior. [I]nterim [D]irector asked her to stop and not to talk to him like that and returned to his office with the maintenance supervisor. [Claimant] continued after the [I]nterim [D]irector, entered his office, and loudly continued to complain about the removed permissions. [Claimant] was very upset and hostile during this encounter and commented that she hoped the [Vice President] uses the way [I]nterim [D]irector has been behaving against him when hiring for the director of the maintenance department job. [Claimant] meant that she did not want to see [I]nterim [D]irector get that position through her comment.

F.F. No. 10. Deeming the Incident willful misconduct, the Board reversed the referee's decision and denied UC benefits under Section 402(e) of the Law, 43 P.S. §802(e). *See* Bd. Op. at 6. It emphasized that the testimony of Employer's many

4

witnesses was consistent as to the material facts, and thus, the Board credited and gave "greater weight to [Employer's] testimony and evidence in this case." Bd. Op. at 3.

Although Employer had a progressive disciplinary process, the Board found Employer had the right to deviate from its policy and impose discipline that it found appropriate. F.F. No. 12. The Board noted Employer's HR partner confirmed that Employer may deviate from progressive discipline when the situation warrants it. *See* Bd. Op. at 5. The Board also determined that Claimant's behavior was not provoked by Interim Director's locking of the thumb-drive of the fire door report in his office. *Id.* It credited Employer's witnesses' testimony that the fire door report was not necessary for the meeting with the Vice President. Therefore, the Board concluded that Claimant did not have good cause for her outburst.

Claimant petitioned this Court for review. Employer intervened, and the Board did not participate, in this appeal. After briefing, we consider the matter.

## II. Issue

The question before the Court is whether insolent, bordering on abusive, remarks and aggressive behavior (yelling and following) directed toward a supervisor constitutes willful misconduct, and thus, is grounds for ineligibility for UC benefits.

## III. Discussion

On appeal,[2] Claimant asserts that the Board erred in determining she committed willful misconduct when the Incident was *de minimis* or provoked by Interim Director's preceding decisions, emphasizing her lack of prior discipline in her 33 years of employment. She argues that the Board erred in relying on

---

[2] Our review is limited to determining whether the Board's findings were supported by substantial evidence, whether the Board committed an error of law, or whether constitutional rights were violated. *Dep't of Corr. v. Unemployment Comp. Bd. of Rev.*, 943 A.2d 1011 (Pa. Cmwlth. 2008). The Board's findings of fact are conclusive on appeal when the findings are supported by substantial evidence. *Grieb v. Unemployment Comp. Bd. of Rev.*, 827 A.2d 422 (Pa. 2003).

5

Employer's policy as grounds for her misconduct when Employer's witnesses did not identify a policy during the hearing. She also contends that the Board erred in crediting the testimony of Employer's witnesses over her testimony, such that the Board's decision is not supported by substantial evidence.[3]

Pursuant to Section 402(e) of the Law, a claimant is ineligible for UC benefits when an employer terminates her employment for willful misconduct. Although not defined in the statute, this Court defines willful misconduct as: (a) a wanton or willful disregard for an employer's interests; (b) a deliberate violation of an employer's rules; (c) a disregard for standards of behavior which an employer can rightfully expect; or (d) negligence indicating an intentional or substantial disregard of an employer's interest or an employee's duties or obligations. *See Klampfer v. Unemployment Comp. Bd. of Rev.*, 182 A.3d 495 (Pa. Cmwlth. 2018). A claimant's deliberate violation of an employer's policy may constitute willful misconduct under the Law. *Chapman v. Unemployment Comp. Bd. of Rev.*, 20 A.3d 603 (Pa. Cmwlth. 2011).

Where a charge of willful misconduct is based on a violation of a work rule, the employer must prove the existence of the rule, the reasonableness of the rule and its violation. *Ellis v. Unemployment Comp. Bd. of Rev.*, 59 A.3d 1159, 1162 (Pa. Cmwlth. 2013). Once the employer establishes a *prima facie* case of willful misconduct, the burden then shifts to the employee to demonstrate good cause for

---

[3] "Substantial evidence is defined as evidence a reasonable mind might accept as sufficient to support the conclusion reached." *Frimet v. Unemployment Comp. Bd. of Rev.*, 78 A.3d 21, 26 n.7 (Pa. Cmwlth. 2013). In determining whether substantial evidence supports a finding, we view the record in a light most favorable to the party that prevailed before the Board by allowing that party the benefit of all reasonable inferences that may be drawn from the evidence. *Tapco, Inc. v. Unemployment Comp. Bd. of Rev.*, 650 A.2d 1106 (Pa. Cmwlth. 2004). Simply because one party views testimony differently than the Board, or its witnesses gave a different version of the events, is not grounds for reversal if the facts found are supported by substantial evidence. *Id.*

his or her conduct. *See Patla v. Unemployment Comp. Bd. of Rev.*, 962 A.2d 724, 727 (Pa. Cmwlth. 2008).

"[T]he [Board] is the ultimate fact-finder in [UC] matters . . . ." *Sipps v. Unemployment Comp. Bd. of Rev.*, 181 A.3d 479, 484 (Pa. Cmwlth. 2018) (citation omitted). As the factfinder, the Board is entitled to make its own credibility determinations regarding witnesses and to resolve any evidentiary conflicts within its discretion. *See Serrano v. Unemployment Comp. Bd. of Rev.*, 149 A.3d 435 (Pa. Cmwlth. 2016). These credibility determinations are not reviewable on appeal. *Id.*

However, whether a claimant's conduct rises to the level of willful misconduct is a question of law subject to our plenary review. *See Scott v. Unemployment Comp. Bd. of Rev.*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014); *Brown v. Unemployment Comp. Bd. of Rev.*, 49 A.3d 933, 937 (Pa. Cmwlth. 2012). Whether language spoken by a claimant rises to the level of willful misconduct is determined by evaluating its use in context and "in accordance with modern parlance" to determine whether it is abusive, vulgar, or offensive. *See Cundiff v. Unemployment Comp. Bd. of Rev.*, 489 A.2d 948, 951 (Pa. Cmwlth. 1985). An employee's "use of abusive, vulgar or offensive language with a supervisor is a form of insubordination that can constitute willful misconduct, even if the employer has not adopted a specific work rule prohibiting such language." *Brown*, 49 A.3d at 937.

### A. Verbal Outburst as Willful Misconduct

In determining whether an employee's statements rose to the level of willful misconduct, the content and context of the verbal exchange, including the tone and volume, are considered. *See Brown*; *Cundiff*.

Relevant here, an employee's remarks questioning an employer's authority and veracity in an insolent manner may constitute willful misconduct. *See*

*Sargent v. Unemployment Comp. Bd. of Rev.*, 630 A.2d 534, 536 (Pa. Cmwlth. 1993) (willful misconduct found when claimant questioned employer's explanation for discharging coworkers and accused the employer of spreading rumors about the cause, expressing skepticism as to the employer's truthfulness). "Even a single instance of vulgarity addressed to and unprovoked by a supervisor may support a finding of willful misconduct." *Viglino v. Unemployment Comp. Bd. of Rev.*, 525 A.2d 450, 453 (Pa. Cmwlth. 1987) (emphasis added). *See also Dietrich v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 488 C.D. 2015, filed Nov. 24, 2015), 2015 WL 7458886 (unreported).[4]

In *Dietrich*, this Court considered the impact of a claimant's statements based on who heard them. There, the claimant questioned his supervisor for not having better things to do than issuing a warning to him for violating a meal break policy. The claimant used a loud voice that was heard by 15 to 20 employees in the office, disrespected the supervisor's authority and questioned his competency. Relying on our published decision in *Sargent*, we held that such behavior disregarded the standards an employer could rightfully expect from its employees and rose to the level of willful misconduct. *Id.*, slip op. at 5-6, 2015 WL 7458886, at *3. *See also Strong v. Unemployment Comp. Bd. of Rev.*, 459 A.2d 57, 59 (Pa. Cmwlth. 1983) (holding claimant's behavior describing his foreman and superintendent as "timorous" on mine safety and calling the superintendent a greenhorn constituted willful misconduct).

In *Sargent*, this Court upheld the Board's determination that a claimant committed willful misconduct when she publicly questioned the decisions of her supervisor, and implied the reasons given were untrue. There, as in the instant case,

---

[4] We cite this unreported decision for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

the Board reversed the referee's decision and made its own findings on the record. It concluded Claimant's admissions that she questioned her supervisor's firing of other employees in the presence of coworkers was insolence and did not meet the standards of conduct an employer had the right to expect from its employees. We upheld the Board's reasoning that the comments were insolent because they were skeptical of the supervisor's motives, interrogating the supervisor in front of others.

Our decisions in *Sargent* and *Dietrich* underscore the relevance of the fact that Claimant scolded Interim Director within the hearing of other employees. Similar to the facts in those decisions, here, Claimant publicly interrogated Interim Director over Vocera, which she knew was audible to other employees, accusing him of having ill motives toward her. F.F. Nos. 9-10. By publicly criticizing Interim Director, Claimant's comments were disrespectful and capable of lowering the perception of his authority as a supervisor. *Dietrich*; *see Nesmith v. Unemployment Comp. Bd. of Rev.*, 402 A.2d 1132, 1133 (Pa. Cmwlth. 1979) (insubordination and use of abusive language directed at supervisor are types of conduct that demonstrate a disregard of the standards of behavior an employer has a right to expect of employees).

As to content, it matters whether the comments were vulgar or abusive. *Cundiff*. Swear words, insults, or derision of a supervisor are sufficiently abusive to qualify as willful misconduct. *See Viglino*; *Nieves v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1333 C.D. 2018, filed Oct. 25, 2019), slip op. at 2, 2019 WL 5491351, at *1 (unreported) (calling supervisor a "sh*thead" and being nasty in a meeting sufficed); *Joncas v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 997 C.D. 2016, filed Feb. 1, 2017), slip. op. at 10, 2017 WL 429554, at *6, (unreported) (yelling profanity while walking toward supervisor sufficed).

9

We are persuaded that the Incident is similar, in terms of Claimant's tone and behavior toward Interim Director, to other instances in which we deemed a single incident[5] sufficient as willful misconduct. *See Farag v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 1902 C.D. 2013, filed Aug. 28, 2014), 2014 WL 4260671 (unreported); *Davis v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 818 C.D. 2018, filed July 26, 2019), 2019 WL 3366254 (unreported) (deeming claimant's angry remarks and screaming willful misconduct).

In *Farag*, we reviewed the testimony of witnesses who described the claimant as "loud" to "volatile," that the claimant was "very aggressive" and threw her cell phone, and was disruptive enough to draw the attention of other teachers. *Farag*, slip op. at 7, 2014 WL 4260671, at *3. We upheld the Board's conclusion that the incident qualified as willful misconduct.

As in *Farag*, Claimant's behavior toward Interim Director, which was described as loud, hostile, and disrespectful, violated the standard of conduct that Employer had a right to expect. Like *Davis*, Claimant screamed at her supervisor, Interim Director. Like *Dietrich*, the circumstances of the Incident here do not merely raise legitimate questions to an employer's decision or raise one instance of disagreement.[6] Rather, Claimant's conduct is textbook insubordination.[7]

---

[5] *But see Battle v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 624 C.D. 2016, filed Oct. 24, 2016), 2016 WL 6156348 (unreported) (claimant had history of discipline); *Hughes v. Unemployment Comp. Bd. of Rev.* (Pa. Cmwlth., No. 2082 C.D. 2015, filed Aug. 4, 2016), 2016 WL 4150516 (unreported) (claimant with 12-year tenure had history of discipline and prior warning).

[6] However, reasonable comments questioning a supervisor's authority may not constitute willful misconduct when there is a concern the supervisor is not compliant with employer's policies. *See Luketic v. Unemployment Comp. Bd. of Rev.*, 386 A.2d 1045 (Pa. Cmwlth. 1978).

[7] "Insubordination" is defined to include "[a]n act of disobedience to proper authority." Black's Law Dictionary 814 (8th ed. 2004). The definition of the term "insubordinate" includes "unwilling to submit to authority . . . infraction of rules, or a generally disaffected attitude toward authority." Webster's Third New International Dictionary 1172 (2002).

Moreover, Claimant was not only hostile and aggressive toward Interim Director, she questioned his competency and decision-making in front of other employees, including the Vice President of Operations. She did so in person, when she yelled at Interim Director in his office, and over Vocera, which could be heard by any employees within a certain range. Employer's witnesses testified that the Vocera communication was heard by several coworkers and others present in the room with Interim Director for the meeting. At a minimum, Claimant was aware that the Vice President was hearing her outburst over Vocera. Given the tone, the volume, and the content of Claimant's verbal statements here, described as angry, yelling, and in a tone ranting, scolding, disrespectful and deriding Interim Director's authority, the Incident constitutes willful misconduct under *Sargent* and later cases adopting its rationale.

Additionally, the record contains ample evidence regarding the conduct and comments under review. Employer presented testimony of eight witnesses who corroborated Claimant's loud, disrespectful tone, and described her outburst as outrageous and the type of conduct that is not tolerated, rendering any prior warning unnecessary. The Board credited this evidence. Such credibility determinations are not reviewable on appeal. *Serrano*. Employer thus met its burden of proof.

## B. Lack of Good Cause

This Court also agrees with the Board's conclusion, based on the credited evidence, that Claimant did not establish good cause for her admittedly loud and hostile outburst. Although Claimant acknowledged her frustration and that she was upset, she asserts there was good cause. She maintains her outburst was *de minimis* in light of Interim Director's provocation, in that he removed some of her information privileges and locked the only copy of the fire door report in his office.

11

In support of deeming her conduct *de minimis*, Claimant cites our unreported decision in *Penn Forest Township v. Unemployment Compensation Board of Review* (Pa. Cmwlth., No. 1976 C.D. 2014, filed July 7, 2015), 2015 WL 5458802 (unreported). However, that case is readily distinguishable. There, the claimant and her supervisor were engaged in a heated altercation where *both* parties used profanity. Also, the supervisor later apologized to the claimant for his behavior. *Id.*, slip op. at 3, 2015 WL 5458802, at *1.

Crucially, Claimant does not establish that either Interim Director or other employees violated the same standards of conduct. Though she emphasizes that Employer's witnesses confirmed that other employees in the maintenance department used profane language, the Incident is not merely an isolated use of an offensive or vulgar phrase. To the contrary, the tone and content of her outburst, *i.e.*, the hostility in scolding him over Vocera, which escalated in person, when she yelled at Interim Director in the hallway and followed him into his office, in which her comments were accusatory and disrespectful, were the reasons the Incident constituted willful misconduct.

Further, unlike the supervisor in *Penn Forest*, there is no indication that Interim Director yelled at or used a similar tone in addressing Claimant; he did not raise his voice and asked her to stop repeatedly. *See* F.F. No. 10. The Incident is described as largely one-sided. Also, unlike the Board here, the Board in *Penn Forest* credited the claimant's testimony over that of her supervisor.

Critically, the Board determined that Interim Director's actions in locking the fire door report in his office before the meeting with the Vice President were not provocation for Claimant's subsequent conduct. *See* Bd. Op. at 5; F.F. Nos. 7, 9. It concluded that "[I]nterim [D]irector's action in locking the thumb-drive in his

12

office – while perhaps inconsiderate or simply a lapse in judgment – is insufficient provocation to excuse [Claimant's] actions." *Id.* The Board also noted: "The record does not reflect any immediate provocation by [I]nterim [D]irector." Bd. Op. at 5.

Ultimately, Employer's evidence, credited by the Board, reflects that Claimant's conduct was insolent, disrespectful, disruptive to other employees in the workplace, and was inconsistent with Employer's standards of conduct.[8] Employer thus met its burden of proving a reasonable standard of conduct, of which Claimant was aware, and Claimant's failure to follow it without good cause. *Chapman*.

## IV. Conclusion

For the foregoing reasons, and discerning no error below, the Board's order is affirmed.

_____
J. ANDREW CROMPTON, Judge

---

[8] Although Claimant challenges the Board's conclusion that she violated a policy as inconsistent with the testimony of record, her contention lacks merit. Claimant cites no authority for the proposition that witnesses must testify to a specific policy violation. Moreover, the record reflects that at the time of her separation, Employer cited the violation of its standards of conduct.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bobbie Lou Clark,                           :
                      Petitioner            :
                                            :
            v.                              :     No.  313 C.D. 2020
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                      Respondent            :

# **O R D E R**

**AND NOW**, this 23rd day of March 2021, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
J. ANDREW CROMPTON, Judge
